# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Gross v. Department of Financial & Professional Regulation*, 2011 IL App (1st) 103101

---

| | |
|---|---|
| Appellate Court Caption | ROBERT C. GROSS, Plaintiff-Appellant, v. THE DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION and DANIEL E. BLUTHARDT, Acting Director of the Division of Professional Regulation of the Department of Financial and Professional Regulation, Defendants-Appellees. |
| District & No. | First District, Third Division<br>Docket No. 1-10-3101 |
| Rule 23 Order filed | September 28, 2011 |
| Rule 23 Order withdrawn | November 1, 2011 |
| Opinion filed | November 2, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The Department of Financial and Professional Regulation properly placed plaintiff's license to practice medicine in "Refuse to Renew" status on the basis of the actions of the Colorado State Board of Medical Examiners placing plaintiff's Colorado license permanently on inactive status, despite the fact that no hearings were held and no discipline was imposed by a hearing panel, since placing plaintiff's license in permanent inactive status qualified as disciplinary action against plaintiff for purposes of the Illinois Medical Practice Act. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-24019; the Hon. Martin S. Agran, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Law Offices of Alan Rhine, of Chicago (Alan Rhine, of counsel), for appellant.

Lisa Madigan, Attorney General, of Chicago (Laura Wunder, Assistant Attorney General, of counsel), for appellee.

Panel

JUSTICE NEVILLE delivered the judgment of the court, with opinion.
Justices Murphy and Salone concurred in the judgment and opinion.

## OPINION

¶ 1    Dr. Robert Gross filed a complaint for administrative review of a decision of the Illinois Department of Financial and Professional Regulation (Department), which held that the Department would refuse to renew Dr. Gross's license. The Department based its decision on a settlement reached between Dr. Gross and an inquiry panel of the Colorado State Board of Medical Examiners (Colorado Board). When the Colorado Board began to investigate allegations of misconduct brought against Dr. Gross, Dr. Gross agreed to have the Colorado Board place his license permanently on inactive status so that the Colorado Board would not formally charge him and he would not need to undergo the process of a full investigation and hearing. Dr. Gross argued to the Department and on administrative review that the Department should not discipline him based on the Colorado settlement because the Colorado Board never charged him with misconduct and it never imposed discipline on him. The trial court affirmed the Department's decision to refuse to renew Dr. Gross's license. Dr. Gross now appeals.

¶ 2    We find that the Department did not clearly err when it held that the agreement to place Dr. Gross's license permanently on inactive status counts as disciplinary action within the meaning of the Illinois Medical Practice Act of 1987 (Illinois Act) (225 ILCS 60/1 *et seq.* (West 2006)). Therefore, we affirm the decisions of the trial court and the Department.

¶ 3                                    BACKGROUND

¶ 4    Dr. Gross held licenses to practice medicine in Colorado, Michigan and Illinois. Dr. Gross did not renew his Illinois license after it expired in 2005. In May 2006, the Colorado Board reviewed seven of Dr. Gross's cases and referred the matter to the state Attorney General for the initiation of disciplinary proceedings against Dr. Gross. Dr. Gross reached an agreement with the Colorado Board in August 2006. The agreed order provides:

> "4. It is the intent of the parties and the purpose of this *** Order *** to provide for a settlement of all matters set forth [in the allegations] *** without the necessity of holding a formal disciplinary hearing. ***
>          ***

6. The Panel has reviewed seven of Respondent's surgical cases and has found that Respondent failed to meet generally accepted standards of medical practice with regard to several cases. Respondent does not admit and specifically denies all allegations of unprofessional conduct. In order to resolve the differences between the parties and avoid the expense and uncertainty of litigation, the parties have agreed to the terms of this Order.

7. The parties specifically agree that the terms of this Order are authorized by §§ 12-36-117(1)(p) and 12-36-118(5)(g)(III), C.R.S. [Colorado Revised Statutes].

### PERMANENT LICENSE INACTIVATION

8. Commencing on the effective date of this Order, Respondent's license will be placed on inactive status.

9. Following inactivation of his license, Respondent shall not perform any act requiring a license issued by the Board.

10. Respondent agrees that the inactivation of his license shall be permanent and Respondent shall not apply to reactivate his license at any time in the future.

\* \* \*

14. This Order and all its terms shall have the same force and effect as an order entered after a formal disciplinary hearing pursuant to § 12-36-118(5)(g)(III), C.R.S. except that it may not be appealed. \*\*\*

\* \* \*

18. \*\*\* [T]his Order shall be reported [to] the Federation of State Medical Boards, the National Practitioner Data Bank/Healthcare Integrity and Protection Data Bank \*\*\* and as otherwise required by law."

¶ 5    In March 2007, the Department notified Dr. Gross that it intended to place his license in "Refuse to Renew" status. Dr. Gross requested a hearing on the allegations raised in support of the proposal to refuse to renew his license.

¶ 6    At the hearing, the Department relied primarily on the agreed order entered in Colorado. The Department showed the administrative law judge (ALJ) the Colorado Medical Practice Act (Colorado Act) (Colo. Rev. Stat. § 12-36-101 *et seq.* (2007)). The parties specified that two sections of the Colorado Act authorized the Colorado order. Those sections provide:

" 'Unprofessional conduct' as used in this article means:

\* \* \*

(p) Any act or omission which fails to meet generally accepted standards of medical practice[.]" Colo. Rev. Stat. § 12-36-117(1)(p) (2007).

"If the hearings panel finds the charges proven and orders that discipline be imposed, it shall also determine the extent of such discipline, which shall be in the form of a letter of admonition, suspension for a definite or indefinite period, or revocation of license to practice. In lieu of a suspension, the hearings panel may impose a fine \*\*\*." Colo. Rev. Stat. § 12-36-118(5)(g)(III) (2007).

¶ 7 Dr. Gross testified that he had worked at a hospital in Colorado, and he disagreed with the executive committee of the hospital about the way the committee ran the hospital. That disagreement precipitated the allegations of unprofessional conduct. When the Colorado Board informed him about the allegations, he elected to negotiate. The Colorado Board agreed not to formally charge Dr. Gross with violating the Colorado Act, and in exchange Dr. Gross agreed to have his Colorado license placed permanently on inactive status. He explained that he and his wife had decided to move to Michigan, so he no longer needed the Colorado license. He informed the Michigan licensing agency of the Colorado order, and the Michigan licensing agency allowed him to continue practicing medicine in Michigan.

¶ 8 In April 2007, the Colorado Board sent Dr. Gross a letter telling him what he needed to do to retain his inactive license. The Colorado Board did not offer to make the license active. Dr. Gross admitted that, according to the Colorado order, the Colorado Board would report the agreement with Dr. Gross to the National Practitioner Data Bank.

¶ 9 The ALJ held that the Colorado Board had taken disciplinary action against Dr. Gross's license to practice in Colorado. According to section 22(A)(12) of the Illinois Act:

"The Department may revoke, suspend, place on probationary status, refuse to renew, or take any other disciplinary action as the Department may deem proper with regard to the license *** of any person issued under this Act to practice medicine *** upon any of the following grounds:

* * *

(12) Disciplinary action of another state or jurisdiction against a license *** to practice as a medical doctor[.]" 225 ILCS 60/22(A)(12) (West 2006).

¶ 10 The ALJ held that the section applied, and the Colorado Board's order justified the Department's decision to place Dr. Gross's license in "Refuse to Renew" status. The Department's medical disciplinary board adopted the ALJ's findings and recommendations. The Director denied Dr. Gross's motion for rehearing. Dr. Gross sought administrative review. The trial court denied Dr. Gross relief. Dr. Gross now appeals.

¶ 11 ANALYSIS

¶ 12 Standard of Review

¶ 13 The parties do not disagree about questions of fact and they agree about what statutes we must interpret, but they disagree about the application of the law to the facts. The parties agree that we review the Department's decision, which applied section 22(A)(12) of the Illinois Act to the undisputed facts, for clear error. See *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 392 (2001).

¶ 14 Disciplinary Action

¶ 15 Dr. Gross contends that the Colorado Board did not take "disciplinary action," within the meaning of section 22(A)(12) of the Illinois Act, because the Colorado Act limits the kinds of discipline the Colorado Board may impose. The Colorado Act specifies that if a hearings panel finds charges of unprofessional conduct proven, the hearings panel may order the

-4-

imposition of discipline, "which shall be in the form of a letter of admonition, suspension for a definite or indefinite period, or revocation of license to practice. In lieu of a suspension, the hearings panel may impose a fine." Colo. Rev. Stat. § 12-36-118(5)(g)(III) (2007). An inquiry panel in Colorado investigated the allegations against Dr. Gross, but the panel filed no formal charges, and no hearings panel ever addressed the allegations. See Colo. Rev. Stat. §§ 12-36-118(1)(b), (1)(c) (2007). The Colorado Board agreed to place Dr. Gross's license on inactive status permanently, and the Colorado Act does not list such action as a form of discipline a hearings panel may impose.

¶ 16    We agree with Dr. Gross that the Colorado Act did not authorize any hearings panel to impose discipline on Dr. Gross without holding a hearing on the charges. However, we find that the inquiry panel could agree to take, and Dr. Gross could agree to accept, the action of placing the license in permanent inactive status. See Colo. Rev. Stat. § 12-36-118(5)(g)(III) (2007). We must decide whether placing Dr. Gross's license in permanent inactive status counts as disciplinary action. The finding that the action does not count as discipline imposed by a hearings panel does not resolve the issue of whether the action qualifies as a disciplinary action within the meaning of the Illinois Act.

¶ 17    The Illinois Act defines "disciplinary action" as "revocation, suspension, probation, supervision, practice modification, reprimand, required education, fines or any other action taken by the Department against a person holding a license." 225 ILCS 60/2(4) (West 2006). We must decide whether placing Dr. Gross's license on permanent inactive status qualifies as "practice modification *** or any other action taken by the Department against a person holding a license." 225 ILCS 60/2(4) (West 2006). Three facts persuade us that the Colorado action here qualifies as a disciplinary action taken against Dr. Gross.

¶ 18    First, by placing Dr. Gross's license on inactive status, the Colorado Board has modified Dr. Gross's practice: it has restricted him from practicing in Colorado, albeit with his acceptance of the restriction. The Colorado Board's action therefore qualifies as "practice modification."

¶ 19    Second, the Colorado Board would regard the action as disciplinary if another state's board had taken similar steps against a doctor. The Colorado Act specifies:

"The discipline of a license to practice medicine *** in another state *** shall be deemed to be unprofessional conduct. For purposes of this subsection ***, 'discipline' includes any sanction required to be reported pursuant to 45 CFR 60.8. This subsection *** shall apply only to discipline that is based upon an act or omission in such other state *** that is defined substantially the same as unprofessional conduct pursuant to *** this section." Colo. Rev. Stat. § 12-36-117(1.5)(b)(2) (2007).

The parties agreed that Colorado would report the action taken with respect to Dr. Gross's license to the National Practitioner Data Bank. The Code of Federal Regulations provides:

"Each Board of Medical Examiners must report to the Data Bank any action based on reasons relating to a physician's *** professional competence or professional conduct–

(1) Which revokes or suspends (or otherwise restricts) a physician's *** license[.]" 45 C.F.R. § 60.8(a)(1) (2007).

The agreement to report the action to the National Practitioner Data Bank, as a restriction on

Dr. Gross's license which the Colorado Board must report pursuant to 45 CFR § 60.8, makes the action count as discipline for the Colorado Act.

¶ 20    Finally, the parties expressly agreed that the Colorado Act, particularly in sections 12-36-117(1)(p) and 12-36-118(5)(g)(III), authorized the agreement, and that the agreement had the same force and effect as an order entered after a formal disciplinary hearing under section 12-36-118(5)(g)(III). The cited sections govern discipline for unprofessional conduct. Thus, the parties agreed that the order had the force and effect of an order entered following a hearing concerning discipline for unprofessional conduct.

¶ 21    Dr. Gross's agreement with the Colorado Board has some characteristics in common with a plea of *nolo contendere*. When a party pleads *nolo contendere* to a charge, that party does not admit that he committed the charged misconduct, but he accepts some form of the consequences just as though he had committed the charged misconduct. See *North Carolina v. Alford*, 400 U.S. 25, 35-36 (1970). Here, Dr. Gross did not admit wrongdoing, but he accepted, as a consequence of the charges, a restriction on his license that precluded him from actively practicing in Colorado.

¶ 22    The Illinois Act provides that the Department may discipline a physician based on "the entry of a *** nolo contendere plea to a felony charge" in any jurisdiction. 225 ILCS 60/22(A)(3) (West 2008). While this section does not directly apply, we find that it indicates that the Department will treat a failure to contest charges in other states as grounds for disciplining a physician in Illinois.

¶ 23                                    CONCLUSION

¶ 24    Although we find that the Colorado Board did not impose discipline on Dr. Gross after a hearing, we hold that the Department did not commit clear error when it concluded that the Colorado Board had taken "disciplinary action" against Dr. Gross's license. The Department's finding justified the decision to place Dr. Gross's Illinois license in "Refuse to Renew" status. Accordingly, we affirm the judgment of the trial court and the Department.

¶ 25    Affirmed.