2023 IL App (3d) 220095

Opinion filed May 16, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| BHANOO SHARMA, M.D., | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Will County, Illinois, |
| | ) | |
| v. | ) | |
| | ) | |
| THE DIVISION OF PROFESSIONAL | ) | Appeal No. 3-22-0095 |
| REGULATION OF THE | ) | Circuit No. 21-MR-2585 |
| DEPARTMENT OF FINANCIAL AND | ) | |
| PROFESSIONAL REGULATION and | ) | |
| CECILIA ABUNDIS, in Her Capacity as | ) | |
| Acting Director of the Division of | ) | |
| Professional Regulation, | ) | Honorable |
| | ) | John C. Anderson, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Justices Albrecht and Davenport concurred in the judgment and opinion.

_____

**OPINION**

¶ 1    The Illinois Department of Financial and Professional Regulation (Department), by its

acting director of professional regulation, Cecilia Abundis (Director), indefinitely suspended Dr.

Bhanoo Sharma's Illinois medical license for a minimum of 18 months. Dr. Sharma sought review

before the circuit court, which affirmed. Dr. Sharma appeals.

## I. BACKGROUND

¶ 3    On February 19, 2021, the Department filed a petition for temporary suspension of Dr. Sharma's Illinois medical license and a complaint citing section 22(A)(12) of the Medical Practice Act of 1987 (Act) (225 ILCS 60/22(A)(12) (West 2020)). Section 22 of the Act provides that the Department may take disciplinary action against a medical license when there has been "[a]dverse action taken by another state or jurisdiction against a license or other authorization to practice as a medical doctor." *Id.* This is commonly referred to as sister-state discipline.

¶ 4    The Department's filings set forth the following allegations. In August 2020, the Oregon Medical Board filed a complaint against Dr. Sharma's Oregon medical license after it reviewed his care of four patients in his Illinois-based practice. The Oregon Medical Board opened its investigation after receiving a report that a $900,000 malpractice settlement against Dr. Sharma was paid in 2019 due to the death of a patient following a 2016 lipoplasty procedure. The Oregon Medical Board found that Dr. Sharma (1) was grossly negligent in performing liposuction and autologous fat transfers, (2) engaged in a pattern of conduct that breached the standard of care and constituted gross negligence, (3) subjected his patients to large volume liposuction without aftercare, fluid resuscitation, or monitoring afterwards, (4) responded to adverse events (such as cardiac arrest, syncope/diaphoresis, suspected allergic reaction, and hypertension) inadequately and dangerously, and (5) accepted patients for surgery who had contraindications to liposuction. In January 2021, the Oregon Medical Board entered a stipulated order wherein Dr. Sharma surrendered his Oregon medical license without admitting or denying the allegations. The order provided that the agreement was public record and the disciplinary action was reportable.

¶ 5    The Department's filings also included Dr. Sharma's licensing history. In 2012, the Oregon Medical Board opened an investigation, after receiving a complaint that a patient of Dr. Sharma's

2

died three days after undergoing a liposuction procedure in Oregon. In January 2015, the Oregon Medical Board concluded that Dr. Sharma engaged in conduct that was unprofessional or dishonorable as well as gross or repeated acts of negligence. The order provided, among other things, that Dr. Sharma was reprimanded, he was ordered to pay a civil penalty of $10,000 and complete education courses, and his Oregon medical license was revoked (which was stayed). In June 2015, the Department entered a consent order and Dr. Sharma's Illinois license was reprimanded. The status of his Oregon license changed to inactive in March 2016 and lapsed in January 2018.

¶ 6        The Department included an affidavit of Dr. John Zander, M.D., the Deputy Medical Coordinator of the Department's division of professional regulation. Dr. Zander stated that he reviewed the Oregon investigation, which revealed that Dr. Sharma's care was grossly negligent, and he was aware Dr. Sharma surrendered his Oregon medical license. Dr. Zander appeared before the Director in an *ex parte* hearing and testified under oath that he believed Dr. Sharma presented a clear and present danger to the public in Illinois. He opined that Dr. Sharma's conduct, which consisted of performing large-volume treatments in a single-person ambulatory center with a non-board certified anesthesiologist, was reckless and a "recipe for disaster and did end in disaster." The Director found that the public interest, safety, and welfare imperatively required emergency action to prevent Dr. Sharma's practice in that Dr. Sharma's actions constituted an immediate danger to the public. The Director temporarily suspended Dr. Sharma's Illinois license, pending a hearing on the complaint, which was scheduled in 11 days.

¶ 7        Dr. Sharma filed a motion to limit the hearing's purpose to first ascertain the validity of the temporary suspension. The Department responded that there was no legal basis entitling him to a hearing on the temporary suspension, and he could ask for a continuance if he needed extra

3

time for the hearing on the complaint. Dr. Sharma sought a continuance, and a hearing was set for March 4, 2021, two days after the original notice date.

¶ 8    On March 4, 2021, an administrative hearing was held. The Administrative Law Judge (ALJ) denied the motion to limit hearing, explaining that it lacked a legal basis but Dr. Sharma could have a continuance. Dr. Sharma provided that he was ready to proceed. The Department rested in reliance on four exhibits: the current complaint, the 2021 Oregon order (license surrendered), the 2015 Oregon order (license revoked but stayed), and the 2015 Illinois order (license reprimanded). Dr. Sharma moved for a directed verdict, arguing that the Department introduced no testimony to explain the Oregon discipline, called no expert witnesses, and presented no evidence or testimony to support a basis for determining discipline. The ALJ denied the motion.

¶ 9    Dr. Sharma testified as to the facts surrounding the complained medical events. He explained that he elected not to litigate the 2020 Oregon complaint because it would have been costly and surrendering his license would cause him to no longer have a stayed revocation from the 2015 Oregon order. Dr. Sharma testified that he had not practiced in Oregon since 2012 and performed thousands of procedures since the malpractice settlement. At the end of his testimony, he attempted to call two expert witnesses to testify regarding the care provided to his patients and to demonstrate that his care was within the standard of care. Dr. Sharma argued that the testimony was necessary to explain the Department's exhibits and show why any discipline should be mitigated. The ALJ denied his request to allow expert witnesses to testify.

¶ 10    On May 13, 2021, the ALJ filed a report and recommendation with the Illinois Medical Disciplinary Board (Board). The ALJ found that Dr. Sharma's voluntary surrender of his license in lieu of the Oregon Medical Board terminating its investigation constituted disciplinary action within the meaning of section 22(A)(12) of the Act. The ALJ recommended that Dr. Sharma's

4

Illinois license be subject to an indefinite suspension for a minimum of 18 months. The ALJ explained that discipline was justified, as Dr. Sharma's history of discipline demonstrated "an indifference to compliance with the standards of care and an indifference to the rules governing the profession." The ALJ expressed concern that Dr. Sharma continuously asserted that he did not do any of the things alleged as part of the Oregon discipline. The ALJ stated that the circumstances presented had potential to result in severe harm to the public.

¶ 11        On June 2, 2021, the Board presented a report of its findings of fact, conclusions of law, and recommendation to the Director. The Board stated it reviewed the record in the matter and adopted the ALJ's report. The Board also recommended that Dr. Sharma's Illinois license be indefinitely suspended for a minimum of 18 months. The report was signed by the Board's chairperson.

¶ 12        On June 23, 2021, Dr. Sharma filed a motion for exceptions and rehearing, arguing (1) a member of the Board failed to appear in person at the hearing, as required by law, (2) the Board's recommendation did not comply with the law as there was no specific indication that the Board members reviewed the transcript, (3) the ALJ improperly denied his motion to limit the hearing, violating his due process rights, (4) the Department failed to introduce testimony to support disciplinary action, (5) the ALJ's conclusions of law conflicted with the evidence and testimony presented and disallowed at the hearing, and (6) the recommended discipline was unsupported by the findings of fact in the ALJ's report and not in furtherance of the purpose of the Act.

¶ 13        On September 30, 2021, the Department issued an order addressing Dr. Sharma's arguments, finding (1) the Board's members received a copy of the record prior to making its determination, (2) one chairperson's signature on the Board's report was allowed per the Governor's Executive Order 2020-07 dated March 16, 2020, which suspended the Open Meetings

5

Act's requirement for in-person attendance by members of a public body, (3) the ALJ properly denied his request to limit the formal hearing, (4) the case was based on the sister-state discipline and the hearing was not an opportunity to present arguments against the findings of the Oregon board, (5) his attempt to relitigate conduct that led to the Oregon stipulated order was not reflective of someone who accepted the reality of the situation and he instead needed to address the 2021 Oregon stipulated order in the context of sister-state discipline, and (6) expert testimony was unnecessary. Dr. Sharma's Illinois license was indefinitely suspended for a minimum of 18 months. The Department considered various factors, such as the seriousness of the conduct that led to the Oregon discipline, prior disciplinary action, lack of contrition for the offenses, and the fact that Dr. Sharma modified his practices following the death of his patient in 2016.

¶ 14    Dr. Sharma sought review of the Department's decision before the court. The court found that Dr. Sharma's primary argument was that he was not given a formal adversarial hearing and rejected that claim. The court provided that, when a professional accepts the consequences for an adverse action in another state, this is tantamount, by statute, to accepting the consequences in Illinois too (citing 225 ILCS 60/22(12) (West 2020), *Ming Kow Hah v. Stackler*, 66 Ill. App. 3d 947 (1978), and *Gross v. Department of Financial & Professional Regulation*, 2011 IL App (1st) 103101). Thus, the court concluded, because Dr. Sharma was given a hearing on whether adverse action was taken against his Oregon medical license, there was no basis to conclude that he did not receive due process. As to other arguments raised by Dr. Sharma, the court accepted the Department's position. Dr. Sharma appealed.

¶ 15                                    II. ANALYSIS

¶ 16    The Act provides that all final administrative decisions of the Department are subject to judicial review, pursuant to the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West

2020)). 225 ILCS 60/41 (West 2020). Such review shall extend to all questions of law and fact presented by the entire record before the court, and thus, no new or additional evidence shall be heard. 735 ILCS 5/3-110 (West 2020). Further, this court reviews the decision of the agency, not the decision of the circuit court. *Pasic v. Department of Financial & Professional Regulation*, 2022 IL App (1st) 220076, ¶ 17. Our standard of review varies depending on the issues presented. Questions of law are reviewed *de novo*, findings of fact are deemed *prima facie* true and correct and will not be disturbed unless they are against the manifest weight of the evidence, and mixed questions of law and fact are reviewed for clear error. *Id.* ¶¶ 17-19.

¶ 17                                    A. Due Process

¶ 18         First, Dr. Sharma argues that his due process rights were violated. Administrative proceedings are governed by the fundamental principles and requirements of due process of law. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 92 (1992). An administrative hearing comports with due process where the parties are given (1) the opportunity to be heard, (2) the right to cross-examine adverse witnesses, and (3) impartiality in ruling on the evidence. *Wolin v. Department of Financial & Professional Regulation*, 2012 IL App (1st) 112113, ¶ 25. However, a court will only find a due process violation if there is a showing of prejudice. *Id.* A claimed due process violation presents a question of law, which we review *de novo*. *Id.*

¶ 19         Dr. Sharma contends that his due process rights were violated because his requests for a hearing on his temporary suspension were denied and his temporary suspension lasted for nine months (from February 19, 2021, to September 30, 2021). Therefore, he argues that he should have been given a hearing on the temporary suspension within 15 days and then a hearing on the complaint after he had been given adequate time to gather information and prepare.

¶ 20         This presents a question of law involving statutory interpretation, which we review

7

*de novo*. *Slepicka v. Illinois Department of Public Health*, 2014 IL 116927, ¶ 13. "In determining the meaning of a statute, a court will not read language in isolation, but must consider it in the context of the entire statute." *Id.* ¶ 14. Where a statute is clear and unambiguous, we are not at liberty to depart from its plain language and meaning by imposing exceptions, limitations, or conditions that the legislature did not express. *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 83 (1994).

¶ 21    The Department's authority to temporary suspend the license of a physician lies within section 37(d) of the Act, which states:

> "The Secretary, after consultation with the Chief Medical Coordinator or Deputy Medical Coordinator, may temporarily suspend the license of a physician without a hearing, simultaneously with the institution of proceedings for a hearing provided under this Section if the Secretary finds that evidence in his or her possession indicates that a physician's continuation in practice would constitute an immediate danger to the public. In the event that the Secretary suspends, temporarily, the license of a physician without a hearing, a hearing by the Disciplinary Board shall be held within 15 days after such suspension has occurred and shall be concluded without appreciable delay." 225 ILCS 60/37(d) (West 2020).

¶ 22    Dr. Sharma argues that the language in section 37(d) provides for a hearing within 15 days as to the temporary suspension and not the complaint. The Department responds that this interpretation is (1) absurd because it would mean that a licensee would be entitled to only have the temporary suspension heard on an expedited basis and (2) inconsistent with due process protections recognized by the United States Supreme Court (citing *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 611 (1974), for the proposition that due process does not require a hearing at a

preliminary stage as long as the requisite hearing is held before the final administrative order becomes effective).

¶ 23    We agree with the Department and find that the clear and unambiguous language of section 37(d) provides for a temporary suspension without any hearing as to the temporary suspension itself. This is conditioned upon the fact that the temporary suspension is sought simultaneously with the institution of proceedings for a hearing. Thus, the requirement of a hearing within 15 days applies to the institution of proceedings, such as the underlying complaint in this case, where a temporary suspension without a hearing has already been granted. See 225 ILCS 60/37(d) (West 2020). Although a temporary suspension without a hearing is a serious measure, it is in keeping with the legislature's intent to increase the Department's disciplinary powers where a physician poses a danger to the public. See 85th Ill. Gen. Assem., Senate Proceedings, May 14, 1987, at 76 (statements of Senator Jones).

¶ 24    Dr. Sharma alternatively argues that he was entitled to at least 30 days' notice before a formal hearing to prepare and gather evidence (citing 225 ILCS 60/36(b) (West 2020)). He fails to address that the ALJ offered to continue the matter, which he declined, and stated that he was ready to proceed. He waived this issue. See *Center Partners, Ltd. v. Growth Head GP, LLC*, 2012 IL 113107, ¶ 66 (waiver arises from an affirmative, consensual act consisting of an intentional relinquishment of a known right). Dr. Sharma also argues that he needed to acquire certain discovery to prepare his case but he fails to specify which documents he sought and never obtained or how this impaired his defense.

¶ 25    Next, Dr. Sharma raises claims related to section 37(a) of the Act, which provides:

> "At the time and place fixed in the notice, the Disciplinary Board provided for in this Act shall proceed to hear the charges, and the accused person shall be accorded

9

ample opportunity to present in person, or by counsel, such statements, testimony, evidence and argument as may be pertinent to the charges or to any defense thereto. The Disciplinary Board may continue such hearing from time to time. If the Disciplinary Board is not sitting at the time and place fixed in the notice or at the time and place to which the hearing has been continued, the Department shall continue such hearing for a period not to exceed 30 days." 225 ILCS 60/37(a) (West 2020).

¶ 26    He first argues that section 37(a) provides that he was entitled to the opportunity to present expert testimony as to standard of care and what, if any, discipline should be imposed. Here, the ALJ reasoned that expert testimony was unnecessary because the question was whether adverse action was taken in another state or jurisdiction against Dr. Sharma's medical license. The statute's language states that Dr. Sharma may present such testimony that is *pertinent* to the charges or his defense. *Id.* The ALJ and Department found that such testimony was not pertinent as to whether the sister-state discipline provision was violated, and we agree.

¶ 27    Dr. Sharma also contends that section 37(a) requires a member of the Board to be present at the formal hearing. He points to specific language that the Board must "hear" the charges and that the Board must continue the hearing if it is "not sitting at the time and place fixed in the notice." *Id.* Dr. Sharma cites *Abrahamson*, 153 Ill. 2d at 95, where the court stated, "[I]t is sufficient if even only one Board member listened to the live testimony." However, this language from *Abrahamson* was made within the context of the facts before it. The supreme court did not analyze section 37(a) or make a new rule. See *Masood v. Division of Professional Regulation of the Department of Financial & Professional Regulation*, 2022 IL App (1st) 220657, ¶ 76 ("*Abrahamson* determined that the presence of one Board member was *sufficient* to afford due

10

process, it did not conclude that it was *necessary*." (Emphases in original.)). Instead, it explained that "absent express statutory language to the contrary, agency members making the final decision need not be present when the evidence is taken, so long as they review the record of proceedings." *Abrahamson*, 153 Ill. 2d at 95; see *Kafin v. Division of Professional Regulation of the Department of Financial & Professional Regulation*, 2012 IL App (1st) 111875, ¶ 33 (holding that Board members need not be present when evidence is taken, as long as they review the record of proceedings before providing its recommendation).

¶ 28        Dr. Sharma also takes issue with the fact that the Board's recommendation was only signed by the Board's chairperson and not by all of its members. He states that the chairperson did not constitute a quorum and the chairperson's signature did not indicate that it was founded in authority from the majority. We reject this argument. First, the Board's recommendation to the Director provides that it was made by a majority of its members. Second, Dr. Sharma points to no authority requiring that each Board member sign the recommendation. Third, the Director's order provided that, at the time of the Board's meeting, the Governor issued an executive order suspending the requirement for in-person attendance by members of a public body. The chairperson signed the Board's report on behalf of the Board, which was operating remotely. See *Masood*, 2022 IL App (1st) 220657, ¶ 79 (rejecting the same argument).

¶ 29        The last due process violation Dr. Sharma claims is that there was no evidence that the absent Board members reviewed the *transcript* from the hearing. He recognizes the Board's statement that it reviewed the *record* but argues that the transcript is not mentioned. We presume that the Board acted lawfully and find that he failed to rebut this presumption. See *Watra, Inc. v. License Appeal Comm'n*, 71 Ill. App. 3d 596, 601 (1979) ("An administrative agency *** is entitled to a presumption that all of its official acts have been performed properly and this

11

presumption extends to a reading and consideration of the evidence.").

¶ 30        For these reasons, we find that Dr. Sharma's due process rights were not violated.

¶ 31                              B. Violation of the Act

¶ 32        Second, Dr. Sharma contends that the Department's determination that he violated section 22(A)(12) of the Act (225 ILCS 60/22(A)(12) (West 2020)) was clearly erroneous. Under this standard of review, we will reverse if we are left with the definite and firm conviction that a mistake has been made. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 393 (2001). Dr. Sharma does not dispute that the voluntary surrender of his Oregon license constituted a basis for discipline under the Act. Instead, he contends that (1) the Department failed to establish such violation because it did not introduce expert testimony and (2) the record from the Oregon proceedings was insufficient.

¶ 33        Dr. Sharma argues that Illinois law is clear in that the Department must present expert testimony to support its finding of a violation and any deviations from the standard of care. He cites two cases to support this proposition, which we find inapposite as they do not involve an alleged violation of the sister-state discipline provision. See *Obasi v. Department of Professional Regulation*, 266 Ill. App. 3d 693 (1994) (expert testimony was used to evaluate whether the physician's conduct constituted patient abandonment); *Farney v. Anderson*, 56 Ill. App. 3d 677 (1978) (the proceedings were fatally tainted where a subjective analysis on the part of a medical panel was used in place of an expert medical opinion). It is evident that he attempts to dispute the underlying allegations that led to the 2020 Oregon discipline, when those facts are irrelevant in establishing a violation of the sister-state discipline provision. It is true that where an administrative agency makes a factual determination that involves technical concepts unique to its expertise, expert testimony must be introduced to support the agency's position. *Chase v.*

*Department of Professional Regulation*, 242 Ill. App. 3d 279, 285 (1993). Here, however, the factual determination that the Department needed to make was whether adverse action had been taken by another state or jurisdiction against Dr. Sharma's medical license. See 225 ILCS 60/22(A)(12) (West 2020). This did not entail a technical concept requiring expertise.

¶ 34　　　　Dr. Sharma also disputes the Department's finding of a violation on the basis that there was no "certification that the record from Oregon was complete," and suggests that there were documents absent from the record. See 5 ILCS 100/10-35 (West 2020). Dr. Sharma references specific language in section 22(A)(12) that provides "a certified copy of the record of the action taken by the other state or jurisdiction being prima facie evidence thereof." 225 ILCS 60/22(A)(12) (West 2020). The Department argues that Dr. Sharma forfeited this argument by failing to raise it at the administrative hearing or in his motion for exceptions and rehearing. In the alternative, the Department argues that the clear and unambiguous language refers to a certified copy of the record *of the action taken*, such as an order, and not the entire record. We find that Dr. Sharma forfeited this contention by failing to raise it in a timely manner and decline to consider it. See *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 214 (2008) (issues not presented before the administrative agency will not be considered for the first time on review).

¶ 35　　　　Therefore, we find that the Department's determination that Dr. Sharma violated section 22(A)(12) of the Act was not clearly erroneous. 225 ILCS 60/22(A)(12) (West 2020).

¶ 36　　　　　　　　　　　　　　　　　C. Discipline

¶ 37　　　　Last, Dr. Sharma takes issue with the Department's decision to indefinitely suspend his Illinois license for a minimum of 18 months. He asks this court to first examine whether an indefinite suspension is authorized by law. Section 22 of the Act provides, in relevant part:

　　　　　　　"The Department may revoke, suspend, place on probation, reprimand, refuse to

issue or renew, or take any other disciplinary or non-disciplinary action as the Department may deem proper with regard to the license or permit of any person issued under this Act, including imposing fines not to exceed $10,000 for each violation ***." *Id*.

¶ 38    Dr. Sharma argues that the word "indefinite" does not appear in the Act and that a suspension must have a definite term. He entirely relies on section 43 of the Act that provides for the restoration of a license from discipline, which states: "At any time after the successful competition of a term of probation, suspension, or revocation of a license, the Department may restore the license to the licensee, unless after an investigation and a hearing, the Secretary determines that restoration is not in the public interest." *Id*. § 43. Dr. Sharma argues that an indefinite suspension is contrary to law as section 43 contemplates a definite term. The Department argues that licenses need not be suspended for a set term and then automatically restored because it would essentially render section 43 superfluous. Additionally, the Department explains that, after 18 months, Dr. Sharma may seek restoration of his license.

¶ 39    The same statutory interpretation rules apply here. *Supra* ¶ 20. Section 22(A) provides for various forms of disciplinary action, including suspensions, and even states that the Department may "take any other disciplinary or non-disciplinary action as the Department may deem proper." 225 ILCS 60/22(A) (West 2020). This undoubtedly includes indefinite suspensions, and we decline to impose a limitation that the legislature did not express. Recently, in *Masood*, 2022 IL App (1st) 220657, ¶ 81, the First District found that indefinite suspensions were authorized under providing for the restoring a license following a term of suspension. We agree.

¶ 40    Further, Dr. Sharma's reliance on section 43 for the proposition that a suspension must be set for a definite term is misplaced. He acknowledges that when discipline is indefinite, it requires

14

the licensee to apply to the Disciplinary Board for restoration of license (citing 68 Ill. Adm. Code § 1285.255 (2005)). Dr. Sharma insists that it "makes more sense" that imposing a definite term with "specific goals" would be in keeping with the Act and the Department failed to establish specific goals for rehabilitation. But the criteria that the Disciplinary Board shall consider when a licensee applies for restoration of a license is already provided by statute. *Id.* Moreover, Dr. Sharma failed to cite any authority suggesting that the Department must provide him with specific goals to restore his license. See *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993) (a court of review is entitled to have issues clearly defined with pertinent authority cited, and it is not a repository into which an appellant may foist the burden of argument and research).

¶ 41　　　Next, Dr. Sharma argues that the Department abused its discretion in imposing an indefinite suspension for a minimum of 18 months because it was not warranted by the underlying facts. An agency abuses its discretion when it imposes a sanction that is overly harsh in view of the mitigating circumstances or unrelated to the purpose of the Act. *Pundy v. Department of Professional Regulation*, 211 Ill. App. 3d 475, 488 (1991). "The purpose of the Act is to protect the public health and welfare from those not qualified to practice medicine." *Kafin*, 2012 IL App (1st) 111875, ¶ 42. We must defer to the agency's expertise and experience in determining what sanction is appropriate to protect the public interest. *Abrahamson*, 153 Ill. 2d at 99.

¶ 42　　　Dr. Sharma raises various sub-arguments, such as the ALJ's recommended discipline was meant to be punitive instead of to protect the public health and welfare, no expert testimony was provided, the voluntary surrender of his Oregon license itself does not support the basis of the 18-month indefinite suspension, such a lengthy suspension should be reserved for the most severe conduct imaginable, the Department prosecutor failed to recommend a term of suspension, and the Department improperly considered his disagreement with the Oregon allegations as an aggravating

15

factor. He also explains the details of the cases from the Oregon investigation.

¶ 43    The record demonstrates that the Director's order provides, in more than one instance, that the basis for the discipline was to protect the public. Although discipline itself is punitive in nature, it is evident from our review of the record that the purpose of the discipline was to protect the public and was warranted based on the facts of this case. Dr. Sharma does not compare his situation to other instances of discipline or otherwise demonstrate how an indefinite suspension for a minimum of 18 months is an abuse of discretion. Also, Dr. Sharma fails to point to any authority requiring (1) expert testimony to aid the Director in determining discipline or (2) the Department prosecutor to recommend the length of discipline. His attempt to defend against the allegations in the Oregon action are also unsuccessful, as already explained by the Department.

¶ 44    As to his point that no expert testimony was offered, we reiterate that expert testimony was unnecessary as the issue did not require a factual determination involving technical concepts unique to its expertise. *Chase*, 242 Ill. App. 3d at 285. For example, the factors the Director properly considered in aggravation included the seriousness of the conduct that led to the Oregon discipline, prior disciplinary action, and lack of contrition for the offenses. See 20 ILCS 2105/2105-130(b)(1)-(9) (West 2020) (listing factors the Department shall consider in aggravation); see *Masood*, 2022 IL App (1st) 220657, ¶ 85 (finding that the lack of contrition shall be considered in aggravation). The Department also appropriately considered in mitigation that Dr. Sharma modified his practices following the death of his patient in 2016. See 20 ILCS 2105/2105-130(c)(1)-(6) (West 2020) (listing factors the Department shall consider in mitigation).

¶ 45    For these reasons, we cannot find that the Department abused its discretion when it indefinitely suspended Dr. Sharma's license for a minimum of 18 months.

¶ 46                           III. CONCLUSION

¶ 47          For these reasons, the judgment of the circuit court of Will County is affirmed.

¶ 48          Affirmed.

*Sharma v. Division of Professional Regulation of the Illinois Department of Financial & Professional Regulation*, 2023 IL App (3d) 220095

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 21-MR-2585; the Hon. John C. Anderson, Judge, presiding. |
| **Attorneys for Appellant:** | Michael K. Goldberg, Jenna E. Milaeger, Dominic A. Velloze, and Jonathan Youseph, of Goldberg Law Group, LLC, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Bridget DiBattista, Assistant Attorney General, of counsel), for appellees. |