2020 IL App (1st) 191161

No. 1-19-1161

Opinion filed August 10, 2020

First Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE VILLAGE OF FRANKLIN PARK, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | Nos. 18 CH 7070 |
| | ) | |
| CHRISTOPHER SARDO and THE BOARD OF | ) | |
| TRUSTEES OF THE FRANKLIN PARK POLICE | ) | Honorable |
| PENSION FUND, | ) | Neil A. Cohen, |
| | ) | Judge, presiding. |
| Defendants-Appellees. | ) | |

_____

JUSTICE HYMAN delivered the judgment of the court, with opinion
Presiding Justice Griffin and Justice Walker concurred in the judgment and opinion.

**OPINION**

¶ 1    The Village of Franklin Park appeals from a circuit court order affirming a line-of-duty

disability pension to police detective Christopher Sardo, who was diagnosed with post-traumatic

stress disorder (PTSD). The Village argues (i) Sardo's PTSD did not result entirely from a single

act of duty and, (ii) because Sardo's PTSD was preexisting, the Board of Trustees of the Franklin

Park Police Pension Fund (Board) erred in awarding the pension.

¶ 2    We affirm the Board. Nothing in the Illinois Pension Code (Code) (40 ILCS 5/1-101 *et seq.*

(2018)) requires an act of duty be the sole cause of an officer's disability, and the Board may award

a police officer a line-of-duty disability pension even if the officer had a preexisting mental condition.

¶ 3                                      Background

¶ 4      Christopher Sardo served in the United States Marine Corps from 1987 to 1991, including a tour of duty in Desert Storm. Besides physical danger, his service exposed him to several traumatic events, including fellow Marines being shot at and killed. After his discharge, Sardo experienced depression, flashbacks, and panic attacks.

¶ 5      Sardo became a Franklin Park police officer in January 1996. The Department of Veterans Affairs (VA) found Sardo had a military-related disability of 90%; 70% was due to PTSD, and the remainder was due to other medical issues. Sardo began receiving VA benefits for his disability in November 2000. In addition, Sardo began receiving outpatient medical treatment including counseling, anger management, and medication. Sardo was not hospitalized and continued working full time.

¶ 6      Sardo often attended traumatic events as a police officer. At the Board hearing, Sardo described a traumatic event involving a collision of two fire trucks. Sardo recalled seeing "one fireman stuck inside the fire truck underneath screaming and hollering *** there was another fireman lying on the ground, still breathing with his skull cracked open and his blood and brains all over the place." Another traumatic event involved his seeing the aftermath of the shooting and death of a police officer. Nothing in the record indicates that these events or others before February 6, 2014, rendered Sardo unable to perform his job.

¶ 7      Sardo had an exemplary career with the Franklin Park Police Department. He began his career in 1996 as a patrol officer, was assigned to the tactical operations, serving for a time as

commander of the tactical unit in 2008, and was promoted to detective in 2008 and assigned to the investigations unit. Sardo received numerous awards and commendations and had excellent performance reviews. Sardo's performance was most recently evaluated on December 31, 2013, about five weeks before the train accident. The evaluation, which covered the period of July 1, 2013, through December 31, 2013, found that Sardo exceeded expectations in job knowledge, the quality of his written work, his attitude, responsibility, and initiative.

¶ 8                                    Train Accident

¶ 9      On February 6, 2014, Sardo responded to a Metra train accident in which a pedestrian died. When Sardo arrived, he saw "disintegrated body parts all over." Sardo, as lead investigator, gathered evidence, interviewed witnesses, reviewed video of the accident, and notified next of kin. He showed the victim's husband a photo of a dismembered body part that contained a distinctive tattoo. The husband recognized the tattoo as his wife's, and Sardo informed him that his wife had been struck by a train and was deceased. Sardo said the husband was "screaming and screaming and I just—his screaming is something I'll never forget in my life. He just kept screaming and running and not believing what he was told."

¶ 10     After the train accident, Sardo again began outpatient treatment for depression and PTSD. Sardo became extremely depressed and experienced severe nightmares and daily panic attacks as well as thoughts of suicide. He said that since the train accident his "whole life ha[d] just been a living hell." He said that incident put him over the edge and he had not recovered from it. Sardo stopped working on May 9, 2014. He applied for a line-of-duty pension on June 22, 2015, asserting a disability due to "[r]epetitive work exposure to life threatening and gruesome situations,

culminating in February 2014 when a female pedestrian was hit by a Metra train across from the police station."

¶ 11                                    Independent Medical Evaluations

¶ 12    As required by statute, the Board assigned three physicians to perform independent medical psychiatric evaluations.

¶ 13    Dr. Robert Reff concluded that the 2014 train incident directly resulted in Sardo's disability. Dr. Reff stated that Sardo had PTSD and major depressive disorder stemming from his service in the military but was functioning as a police officer at "a very high level." Dr. Reff explained that Sardo's preexisting PTSD influenced his reaction to the accident. "In processing the scene, reviewing the video surveillance tapes of the accident and speaking with the victim's husband, his pre-existing PTSD symptoms were aggravated to the degree that he was no longer able to function as a police officer some three months later."

¶ 14    Dr. Stevan Weine concluded Sardo's trauma exposure included several events that were part of his police duties "such as suicides, sexual assaults, accidents, and shootings, which affected him cumulatively." Dr. Weine concluded his "disability [was the] result of trauma exposure in the workplace, specifically the February 2014 Metra train accident." Dr. Weine noted that the train accident was "best viewed as an aggravation of a pre-existing condition."

¶ 15    Dr. Catherine Frank also concluded the train accident aggravated a preexisting condition. She stated that, "[t]he act of collecting and investigating body parts as related to the February 6, 2014 pedestrian/Metra accident was the acute trigger that led to Officer Sardo's exacerbation of pre-existing PTSD and major depression."

¶ 16    In sum, the three physicians determined (i) Sardo had PTSD and Major Depressive Disorder from his service in the Marines but was able to serve as a police officer, (ii) the train accident led to Sardo's trauma and triggered his preexisting PTSD, and (iii) Sardo was permanently disabled after the accident and would not be able to return to his position.

¶ 17                          Board Decision

¶ 18    The Board's final administrative decision held that Sardo met the criteria for a line-of-duty pension under section 3-114.1 of the Code (40 ILCS 5/3-114.1 (West 2018)). The Board concluded that, although the train accident was "not the predominant cause," it was "an act of duty, as defined by the Code," and "did contribute to Applicant's disability." The Village filed a complaint in the circuit court seeking administrative review of the Board's decision. In a well-reasoned written decision, the circuit court confirmed the Board's decision.

¶ 19                            Analysis

¶ 20    The Village argues (i) an act of duty must be the sole cause of an officer's disability and (ii) Sardo's police work cumulatively aggravated his preexisting PTSD. The Village also argues that the caselaw supports treating mental and physical disabilities differently and, though an officer may receive a line-of-duty pension for aggravating a preexisting physical condition, he or she may not receive a line-of-duty pension for a mental disability when the mental condition preexisted.

¶ 21    Sardo responds that under section 3-114.1 of the Code (i) an act of duty need not be the sole cause of a police officer's resulting mental disability and (ii) the Board may award a line-of-duty pension to an officer for a mental disability despite an officer's preexisting mental condition.

¶ 22                        Standard of Review

¶ 23    We review the Board's decision and not the circuit court's conclusion. *Id.* § 4-139. "The applicable standard of review, which determines the degree of deference given to the agency's decision, depends upon whether the question presented is one of fact, one of law, or a mixed question of law and fact." (Internal quotation marks omitted.) *Village of Oak Park v. Village of Oak Park Firefighters Pension Board*, 362 Ill. App. 3d 357, 365 (2005). We treat pure questions of law *de novo*, such as the proper interpretation of a statute or, as here, the Code. *MacDonald v. Board of Trustees of the Park Ridge Police Pension Fund*, 294 Ill. App. 3d 379, 382 (1998); *Village of Oak Park*, 362 Ill. App. 3d at 365.

¶ 24    The manifest weight of the evidence standard applies to questions of fact, here, the Board's findings. *Hammond v. Firefighters Pension Fund of the City of Naperville*, 369 Ill. App. 3d 294, 307 (2006). Questions of fact arise where conflicting evidence exists as to material facts. To find an administrative agency decision against the manifest weight of the evidence, the opposite conclusion must be clearly evident. *Robbins v. Board of Trustees of the Carbondale Police Pension Fund*, 177 Ill. 2d 533, 538 (1997). The agency's decision should be upheld when the record contains competent evidence. *Id.*

¶ 25    Finally, we examine mixed questions of law and fact under the intermediate, clearly erroneous standard. "A mixed question exists where the historical facts are admitted or established, the rule of law is undisputed, and the only issue is whether the facts satisfy the settled statutory standard." (Internal quotation marks omitted.) *Hammond*, 369 Ill. App. 3d at 307. The clearly erroneous standard dictates we defer to the agency's decision unless we arrive at the "definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Carrillo*

*v. Park Ridge Firefighters' Pension Fund*, 2014 IL App (1st) 130656, ¶ 21; *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001).

¶ 26    We must decide under the Code if the Board can award a line-of-duty pension to a police officer for a mental disability, when the officer has a preexisting mental condition. This a question of law, so our review is *de novo*.

¶ 27                    Act of Duty Need Not Be Sole Cause of Disability

¶ 28    The Village argues that the act of duty, here the 2014 train accident, must be the sole cause of an officer's disability to warrant a line-of-duty pension and that an officer's preexisting mental condition due to the cumulative effects of being an officer precludes him or her from a line-of-duty pension. The plain language of the Code states otherwise. Under section 3-114.1(a) of the Code:

> "If a police officer as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty, if found to be physically or mentally disabled for service in the police department, so as to render necessary his or her suspension or retirement from the police service, the police officer shall be entitled to a disability retirement pension ***." 40 ILCS 5/3-114.1(a) (West 2018).

¶ 29    The words "solely" or "entirely" do not appear in the Code. Nor does the Code define the degree to which the resulting disability must be caused by the act of duty.

¶ 30    The Village argues, however, that *Prawdzik v. Board of Trustees of the Homer Township Fire Protection District Pension Fund*, 2019 IL App (3d) 170024, ¶ 46, supports its contention that Sardo may receive a line-of-duty disability pension only when an act of duty entirely caused (rather than merely contributed to) the disability. The Village quotes from *Prawdzik* that the "stress

alleged to be disabling [to a police officer] must result entirely from a specific, identifiable act of duty that is unique to police work and that involves a special risk not confronted by members of the general public." (Emphasis omitted.) *Id.*

¶ 31    *Prawdzik*, however, involves a line-of-duty disability pension for a firefighter under section 4-110 of the Code (40 ILCS 5/4-110 (West 2018)), not a police officer under section 5-114.1 of the Code (*id.* § 5-114.1). Courts do not treat these sections similarly. Indeed, the court explained that "[t]hese divergent statutory definitions of 'act of duty' entail different standards for awarding 'line of duty' disability pensions to police officers as compared to firefighters." *Prawdzik*, 2019 IL App (3d) 170024, ¶ 46. We do not rely on cases involving a line-of-duty disability pension for a firefighter as authority for determining a line-of-duty disability pension for a police officer. Thus, under the Code's plain language, an officer may receive a line-of-duty pension even if the disability is not "solely" caused by an act of duty.

¶ 32                    Preexisting Mental vs. Physical Conditions

¶ 33    The Village concedes police officers with preexisting physical conditions may receive a line-of-duty pension for aggravating the condition while performing an act of duty. For instance, in *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 491 (2007), a police officer suffered an injury in the line-of-duty when attempting to assist the transportation of an arrestee. While walking the arrestee up a flight of stairs, the arrestee stumbled and began to fall. The police officer attempted to prevent the arrestee from falling and, in the process, became entangled with the arrestee, and both tumbled to the bottom. The officer sustained injuries to his right knee. *Id.*

¶ 34    That the officer had preexisting arthritis of his right knee was undisputed. And the officer's knee injury originally occurred outside of the line of duty, like Sardo's mental condition. *Id.* at 500-02. The court accepted the preexisting condition as affording the officer a line-of-duty pension, noting that a disability pension may be based on the line-of-duty aggravation of a preexisting physical condition. *Wade*, 226 Ill. 2d at 505. The court quoted *Barber v. Board of Trustees of the Village of South Barrington Police Pension Fund*, 256 Ill. App. 3d 814, 818 (1993), which held that nothing requires " 'the duty-related incident be the originating or primary cause of the injury, although a sufficient nexus between the injury and the performance of the duty must exist.' " *Wade*, 226 Ill. 2d at 505.

¶ 35    The Village contends, however, that the Board should treat preexisting mental conditions differently than preexisting physical conditions. Again, the language of the Code states otherwise: "a police officer *** found to be physically or mentally disabled for service in the police department, so as to render necessary his or her suspension or retirement from the police service, *** shall be entitled to a disability retirement pension." 40 ILCS 5/3-114.1(a) (West 2018). This provision neither requires nor even suggests that the Board apply a different standard to police officers who suffer from a mental rather than a physical disability.

¶ 36    The caselaw supports Sardo, too. The Village relies on *Miller v. Board of Trustees of the Oak Lawn Police Pension Fund*, 2019 IL App (1st) 172967, ¶ 60, to argue that that preexisting mental conditions should be treated differently than preexisting physical conditions. In *Miller*, another panel of this district stated that "the theory of 'aggravating preexisting physical conditions' is inapplicable in matters that concern mental disability." *Id.* The Village interprets this statement

as a prohibiting an officer from receiving a line-of-duty pension whenever an act of duty aggravates a preexisting mental condition. We disagree.

¶ 37    Like Sardo, the police officer in *Miller* served as a Marine and had been diagnosed with PTSD after seeing combat. See *id.* ¶¶ 4-13. Several years later, working as a police officer, Miller filed for a line-of-duty pension asserting that multiple traumatic incidents that occurred while on duty as an officer aggravated his PTSD. *Id.* ¶ 26. The Board awarded Miller a nonduty pension but denied him a line-of-duty pension. The Board determined Miller had misrepresented or exaggerated the incidents he claimed aggravated his PTSD and concluded his disability stemmed from conduct unrelated to an act of duty. *Id.* ¶ 34.

¶ 38    On appeal, Miller argued, in part, the Code allows a line-of-duty pension for aggravation of a mental disability. For support, Miller cited two cases, *Alm v. Lincolnshire Police Pension Board*, 352 Ill. App. 3d 595 (2004), and *Devaney v. Board of Trustees of the Calumet City Police Pension Fund*, 398 Ill. App. 3d 1 (2010), in which officers received a line-of-duty pension for a preexisting physical disability that was aggravated by an act of duty. The court found Miller's reliance on those cases misplaced because they involved an act of duty rather than " 'job-related stress associated with the general nature of police work or with circumstances such as interpersonal conflicts and concern about job performance, which are common in civilian workplaces.' " *Miller*, 2019 IL App (1st) 172967, ¶ 58 (quoting *Alm*, 352 Ill. App. 3d at 600). In short, Miller's inability to establish that an act of duty aggravated his PTSD precluded him from eligibility for a line-of-duty pension.

¶ 39    Unlike in *Miller*, Sardo's credibility went unquestioned, and the parties agreed that an act of duty caused his disability. Although the *Miller* court distinguished physical and mental disabilities, the specific question before us fundamentally is different.

¶ 40    The standard for determining whether a police officer's mental disability qualifies for a line-of-duty pension is set out in *Robbins*, 177 Ill. 2d 533. Under *Robbins*, to receive a line-of-duty pension based on a mental disability, the police officer needs to establish the disability is the " 'result of a specific, identifiable act of duty unique to police work.' " *Id.* at 542 (quoting *Trettenero v. Police Pension Fund of the City of Aurora*, 268 Ill. App. 3d 58, 63 (1994)). A line-of-duty pension requires more than generalized police stress of multiple origins. *Id.* at 543. Significantly, the court did not say or imply that an officer with a preexisting mental condition is disqualified from a line-of-duty pension.

¶ 41    Despite Sardo's preexisting PTSD, he functioned as a police officer at a high level before the 2014 train accident. As already mentioned, he received numerous awards and commendations and a positive performance review just five weeks before the accident. The three doctors who examined him opined that he became unable to perform his duties because of the train accident. Based on the doctors' opinions, Sardo was not disabled until the train accident rendered him unfit to perform his duties as a police officer And, the parties agree the train accident constituted an "act of duty," as defined by the Code. A preexisting physical disability and a preexisting mental condition are treated alike. Thus, the Board correctly held that Sardo's disability was incurred in or resulted from an "act of duty" as defined by the Code.

¶ 42    Circuit court judgment and board decision affirmed.

---

## No. 1-19-1161

---

| | |
|---|---|
| **Cite as:** | *Village of Franklin Park v. Sardo*, 2020 IL App (1st) 191161 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-CH-7070; the Hon. Neil A. Cohen, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | John B. Murphey and Matthew D. Rose, of Rosenthal, Murphey, Coblentz & Donahue, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Richard J. Reimer and Mark S. McQueary, of Reimer & Dobrovolny PC, of Hinsdale, for appellee Board of Trustees of the Franklin Park Police Pension Fund. |
| | Thomas W. Duda, of Palatine, for other appellee. |