2024 IL App (4th) 220753

NO. 4-22-0753

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 10, 2024
Carla Bender
4th District Appellate
Court, IL

| | |
|---|---|
| CHRISTOPHER D. LEONE, D.C., | ) Appeal from the |
| Plaintiff-Appellee, | ) Circuit Court of |
| v. | ) Sangamon County |
| THE DEPARTMENT OF FINANCIAL AND | ) No. 15MR436 |
| PROFESSIONAL REGULATION, DIVISION OF | ) |
| PROFESSIONAL REGULATION; and CECILIA | ) |
| ABUNDIS, in Her Official Capacity as Acting Director | ) |
| of the Department of Financial and Professional | ) Honorable |
| Regulation, | ) Jennifer M. Ascher, |
| Defendants-Appellants. | ) Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court, with opinion.
Justices Steigmann and Grischow concurred in the judgment and opinion.

**OPINION**

¶ 1    This administrative matter has a protracted procedural history stretching over a decade and

involves facts well outside of that time frame. This appeal arises from an attempt by defendants

the Department of Financial and Professional Regulation (Department) and Cecilia Abundis, in

her official capacity as Acting Director of the Department of Financial and Professional Regulation

(Director) to impose discipline upon plaintiff Christopher D. Leone, D.C., due to certain activities

performed as a licensed chiropractor in the state of Illinois. This matter has been reviewed by the

circuit court of Sangamon County on three separate occasions; none of those reviews resulted in

affirmance of the Director's decision. The Department appeals the latest reversal of its decision,

presenting multiple contentions of error. For the reasons that follow, we reverse the circuit court

and affirm the Director's decision.

¶ 2                                     I. BACKGROUND

¶ 3                                     A. Prior Incidents

¶ 4        Leone has practiced as a chiropractor since 1999 and initially practiced in the state of Washington. In 2003, the Washington administrative agency responsible for supervising the chiropractic profession acted against Leone based on the allegation that he "failed to document self-care treatment" for a patient. The agency's allegations included the mention of a letter written by Leone in which he admitted that he had failed to complete the required documentation. That letter is not included in the record. The matter was resolved pursuant to an informal disposition via stipulation. While the Washington agency alleged a factual basis in paragraph 1.3 of the stipulation for its disposition, the following language was also included: "[Leone] does not admit any of the allegations in the Statement of Allegations and Summary of Evidence or in paragraph 1.3 above. This Stipulation to Informal Disposition shall not be construed as a finding of unprofessional conduct or inability to practice." The stipulation also made clear that Leone was not being subjected to "formal disciplinary action." Leone agreed to, among other things, return the fees charged to the patient and engage in additional training pertaining to "record keeping."

¶ 5        Leone began practicing in Illinois in 2004, and in 2010, the Department alleged that he utilized misleading advertisements in promoting his services. The Department also alleged that Leone used inappropriate contracts, resulting in billing disputes with several clients. The matter was resolved with a consent order, pursuant to which Leone admitted to the allegations and was reprimanded with a $5000 fine and a requirement that he undertake 20 hours of continuing education; 10 of those hours were to focus on Medicare billing and insurance coding and another 10 on record keeping.

¶ 6        In 2013, the United States Attorney filed an information in the Central District of Illinois alleging that Leone "knowingly and fraudulently" submitted Medicare claims of less than $1000 for one-on-one physical therapy services that were not provided. See 18 U.S.C. § 1003 (2012). The billing at issue was submitted to both private insurance companies and Medicare and referenced billing code 97110 in the Physician's Current Procedural Terminology Manual (CPT). Billing code 97110 indicates that a therapeutic procedure or exercise was performed to "develop strength and endurance, range of motion and flexibility" in the patient. To qualify for payment under this code, direct one-on-one contact between the provider and patient was required.

¶ 7        Following negotiation, the parties entered into a plea agreement, pursuant to which Leone pleaded guilty to the one-count information and stipulated to a factual basis for his plea. The stipulation recited that, despite the requirements for billing under code 97110, Leone's practice

> "was not to provide one-on-one physical therapy. Instead, [Leone] or one of his staff would instruct the patient how to use physical therapy equipment located in a 'sun room' area of his office. After that initial instruction, however, neither [Leone] nor any of his employees were present in the therapy room. Patients performed all physical therapy treatment on their own, without any supervision or direct one-on-one contact with [Leone] or any other employee. [Leone] was not present in the physical therapy room, which was separate from the room in which he was contemporaneously administering spinal adjustments to other patients. Notwithstanding this, notations and automatic entries in the patient charts falsely stated that the patients received hands-on, one-on-one physical therapy from the provider."

The stipulation went on to detail charges for services Leone was alleged to have provided to four patients that were submitted to Medicare in the amount of $150. Those services were not actually provided, and the claims were submitted "with the knowledge that he did not perform the service charged."

¶ 8    The plea agreement detailed that Leone submitted 1324 claims under code 97110 to private insurance companies from 2005 through 2011, demanding payment in the sum of $93,900; Leone was paid $48,624.48 for those billed services. As part of the plea agreement, Leone was required to pay restitution of $48,624.28 to the private insurance companies. Leone also acknowledged that he had read the plea agreement, that the stipulated facts were true, and that he was pleading guilty because he was in fact guilty. The court accepted the plea and stipulation and entered judgment on one count of submitting a false demand against the United States (Medicare fraud), a misdemeanor. Leone received three years of probation and was ordered to pay restitution and perform 1440 hours of community service not to be associated "with, or include any medical or chiropractic care." Leone immediately paid the restitution judgment.

¶ 9    B First Administrative Proceeding

¶ 10    Shortly after the Medicare fraud charge was filed against Leone, the Department, in September 2013, filed a five-count complaint alleging multiple violations of the Medical Practices Act of 1987 (Act) (225 ILCS 60/22(A)(5), (6), (21), (25) (West 2012)). Counsel for Leone filed an appearance in the matter, and several continuances followed. During the litigation, Leone applied to renew his chiropractic license. One of the questions on the application asked whether he had been convicted of any criminal offense, state or federal, since July 2011; Leone answered, "No," failing to document the Medicare fraud conviction.

¶ 11    In June 2014, the Department filed a six-count amended complaint. The

Department alleged that Leone engaged in dishonorable, unethical, or unprofessional conduct likely to deceive, defraud, or harm the public (225 ILCS 60/22(A)(5) (West 2014)) (count I); obtained fees by fraud, deceit, or misrepresentation (*id.* § 22(A)(6)) (count II); made or filed false records or reports (*id.* § 22(A)(21)) (count III); was guilty of gross, willful, and continued overcharging for professional services (*id.* § 22(A)(25)) (count IV); used false, fraudulent, or deceptive statements in documents connected with his chiropractic practice (*id.* § 22(A)(31)) (count V); and committed fraud or misrepresentation in applying to renew his license (*id.* § 22(A)(9)) (count VI). Leone filed an answer to the amended complaint admitting the factual circumstances as pleaded but "denie[d] that there was no visual supervision by himself or any other employee."

¶ 12        The matter proceeded to a hearing, where, among other things, Leone's plea agreement and conviction in the federal case were submitted, along with the prior Washington and Illinois disciplinary documents, as well as the 2014 licensing renewal application. Eight witnesses testified at the hearing, including Leone, Dr. Mario Fucinari, Dr. Evan Gwilliam, and several character witnesses. By agreement of the parties, Leone proceeded first in the proceedings before the administrative law judge (ALJ). Also relevant, Leone's counsel throughout the administrative hearings lodged objections because no member of the Medical Disciplinary Board (Board) was present; the objections were overruled.

¶ 13                                    1. *Leone's Testimony*

¶ 14        Leone testified that he began practicing as a chiropractor in 1999 in Washington and opened his own practice in Illinois in 2004. His wife had a nursing degree and worked as his assistant. His office was a "110-year-old mansion style home" that was converted into his chiropractic practice on the main floor, with an apartment on the second floor.

¶ 15        Services billed under code 97110 were therapeutic exercises "to rehabilitate the spine and restore range of motion and movement and alignment." Following spinal adjustments, patients would be instructed on how to perform exercises on a treadmill, stair climber, or exercise ball. Leone would instruct patients on how to perform exercises initially and his wife would then supervise them. Leone explained that patients would perform exercises in the sunroom of his office. Pictures of this room were submitted into evidence, which were taken from the front desk area where his wife would have been seated during the workday. A video of the inside of the office was also placed into evidence. The exercises billed under code 97110 were performed by patients in the sunroom while Leone's wife was supervising from the desk, approximately 12 feet away. Leone could also see patients in the exercise room from the adjusting room in order to provide "dual supervision" of the exercising patients. Patients would never be exercising in the sunroom without someone watching them.

¶ 16        Turning to the plea agreement in the Medicare fraud case, Leone disagreed with the factual statements contained in the stipulation of facts that patients performed all therapeutic exercises on their own without supervision or direct one-on-one contact with Leone or any of his employees. While Leone agreed that he did not have direct one-on one contact, he contended that he and his wife provided visual and verbal supervision. He also disagreed with the statement that entries in his patient's charts falsely stated he provided hands on, one-on-one physical therapy. While the therapy was not "hands on, 100 percent," there were varying degrees of visual, verbal, and manual supervision.

¶ 17        Attempting to explain his federal guilty plea, Leone said that he was unable to modify the language in the plea agreement, as "the time for negotiations had run out" and the plea was a "take-it-or-leave-it" proposition. He ultimately would still have pleaded guilty to the

misdemeanor charge but would have reworded the factual basis in the plea, even though he was "not exactly sure" what he did wrong to warrant the federal conviction. Leone read the plea agreement line by line and, although it contained false information, he signed it. He did not dispute the number of times listed in the plea agreement that he billed private insurers for services under code 97110. Since the conviction, Leone had made improvements to his billing and documentation practices to ensure all visits were properly documented and billed.

¶ 18    Regarding the licensing renewal application, Leone testified that he understood the question asking whether he had been convicted of any crime since July 31, 2011, to mean whether there were "any new convictions that the Department was unaware of at the time of the renewal application." He agreed the renewal application question was straightforward and not confusing. When he completed the application, the present litigation based on the federal conviction had already been pending for almost a year. He did not receive legal advice on how to complete the application but called a Department help line to inquire if he should answer yes or no to the application; he did not testify to the response he received.

¶ 19    Leone stated that he received "discipline" from a licensing agency while practicing in Washington for failing to keep accurate records of a patient's home exercises and received a reprimand. He was also disciplined in Illinois, having received a reprimand for using prepaid contracts. The licensing agencies required Leone to take additional training regarding record keeping practices.

¶ 20                                    2. *Fucinari's Testimony*

¶ 21    Fucinari testified on behalf of Leone as an expert in chiropractic documentation, coding, compliance, and ethics. His testimony focused on health care compliance pertaining to the delegation of therapy services coded under 97110. In 2010, Leone took a continuing education

course taught by Fucinari relating to documentation, coding, and compliance. Course topics included billing under code 97110. Leone hired Fucinari to assist with the federal case as an expert witness and inspect Leone's office.

¶ 22        Chiropractors could delegate certain tasks that did not require licensing, such as physical therapy, to their assistants if (1) the assistant was properly trained; (2) the chiropractor had established a treatment plan setting forth the frequency, duration, and goals of the activities; and (3) the chiropractor was available to assist if required. Fucinari went on to explain that direct one-on-one contact with the patient included the assistant being in contact "visually, verbally, or manually." For example, a patient could be directed to walk on a treadmill for 15 minutes and visual supervision could be delegated to a properly trained assistant and that service would qualify to be billed under code 97110. Even though the supervision of the therapy was delegated, regulations allowed for the service to be billed as if the chiropractor provided it himself.

¶ 23        Fucinari visited Leone's office, where he was shown office protocols and how Leone and his chiropractic assistant provided the physical therapy services billed under code 97110. The arrangement of Leone's office allowed the assistant to supervise patients' physical therapy exercises from the front desk. If the assistant maintained visual and verbal contact with the patient while seated at the desk, this would constitute sufficient supervision. He believed that Leone met the standard of care for delegating duties to an assistant. He acknowledged that his opinions as to whether Leone's practices conformed to established standards were based solely on what was relayed to him by Leone, a review of some practice notes in patient records, and the office's care plan.

¶ 24        Fucinari agreed that being convicted of Medicare fraud cast a bad light on the chiropractic profession and the health care community. Taken as true, the facts in the guilty plea

did not show patient harm, but the statements in the guilty plea established that neither Leone nor his assistant provided a sufficient level of supervision to patients while performing exercises billed under code 97110. Further, Fucinari had reviewed at least three patient files where Leone had documented "one-on-one physical therapy," despite Fucinari's belief Leone did not "meet the threshold for one-on-one direct supervision." While Leone was not in compliance, there was no evidence of an intent to mislead. As to whether the conduct in Leone's guilty plea violated ethical standards, Fucinari was unable to offer an opinion because he could not "testify as to the intent of [Leone]." However, Leone violated an ethical tenet of the American Medical Association's (AMA) chiropractor ethical code by failing to disclose the prior conviction on his renewal application.

¶ 25                                3. *Gwilliam's Testimony*

¶ 26            Gwilliam testified as a medical coding expert pertaining to therapy services coded under 97110. He had a chiropractic degree and expertise in the field, including certifications and experience teaching coding and the creation of educational materials on that subject. Gwilliam was licensed to practice in Utah but practiced previously in Washington and Oregon. He explained that the CPT manual was created and maintained by the AMA, and it provides procedure codes that are government approved to be used on insurance claim forms for reimbursement. The manual is a national baseline, with state specific regulations that could also apply. Code 97110 is the approved billing code for physical therapy exercises and requires the provider to have direct, one-on-one verbal, visual, or physical contact with the patient. Regardless of whether the provider billed Medicare or a private insurance company, the patient must receive supervision as required.

¶ 27            Gwilliam did not visit Leone's office but had reviewed pictures of it. Hypothetically, if a provider had visual or verbal contact with a patient approximately 12 feet away

while completing exercises, that would generally be sufficient to satisfy the billing requirement of code 97110. However, Gwilliam did not review any patient records. Instead, he formed his opinions from reviewing the Department's complaint, the complaint in the federal case, Fucinari's report, and photographs and video of Leone's office. In his opinion, it appeared better record keeping would have prevented some of the issues Leone was facing.

¶ 28 Regarding the plea agreement, Gwilliam stated the facts in the plea established that there was no supervision and without supervision, the services could not be appropriately billed under code 97110. He testified, "If there was no supervision, then the code was not satisfied."

¶ 29 4. *Character Witnesses*

¶ 30 The ALJ then heard from five character witnesses for Leone. All the witnesses were members of the same church community and generally had a positive view of Leone and his reputation in the community as an individual and as a chiropractor.

¶ 31 5. *ALJ Report and Recommendation*

¶ 32 The ALJ issued his report and recommendation, finding that, pursuant to the guilty plea in the federal case, Leone had admitted that his patients performed physical therapy on their own without supervision. Also, Leone admitted in his plea that entries in patient records indicating that they received hands-on or one-on-one physical therapy were false. Further, the guilty plea established that Leone knowingly submitted claims to Medicare for services that he did not provide. Leone had also billed private insurers numerous times under the same code as Medicare.

¶ 33 The ALJ concluded that an element of the crime of which Leone was convicted was the submission of a fraudulent demand for payment because his patients were unsupervised during therapeutic exercises. The conviction also established that he engaged in false billing and false entries in patient records. All of these acts constituted violations of the Act as set forth in counts I

through V of the Department's administrative complaint. Moreover, the failure to disclose the federal conviction in the renewal application established a violation of the Act as set forth in count VI. The ALJ rejected Leone's argument raised during closing arguments that expert testimony was required to prove a deviation from the ethical standard alleged in counts I through V. The ALJ reasoned that those counts involved "issues of fraud and false statements, and do not require the Board to draw upon their own professional skill and scientific training to produce findings." The ALJ recommended an indefinite suspension of Leone's license for a minimum of two years.

¶ 34          6. *The Board's Recommendation and the Director's Decision*

¶ 35          Leone filed exceptions and a motion for rehearing, asking for reconsideration of the ALJ's report and recommendation. The Board adopted the ALJ's factual findings, conclusions of law, and recommended discipline. The Director denied Leone's exceptions and request for rehearing and adopted the ALJ's factual findings and conclusions of law. The Director imposed an indefinite suspension of Leone's license for a minimum of two years.

¶ 36          7. *Review in the Circuit Court*

¶ 37          Leone filed a complaint in the circuit court for administrative review of the Director's decision, as well as an emergency motion to stay the enforcement of the administrative decision. The court granted the motion for a stay, allowing Leone to continue to practice during the pendency of the case. The matter then languished in the court for three years, with little to no activity.

¶ 38          Both Leone and the attorney general on behalf of the Department filed briefs and eventually presented argument to the circuit court. Leone argued, among other things, that (1) the Department was required to present expert testimony establishing that the statements in the plea agreement showed a deviation from the applicable standard of care leading to violations of the

Act; (2) it was improper for the Department to solely rely on the statements in the plea agreement to establish a violation; (3) his due process rights were violated when a Board member was not present during the hearing; (4) the indefinite suspension for a minimum of two years was overly harsh; and (5) the decision was clearly erroneous.

¶ 39        The Department argued, among other things, that Leone's statements in the plea agreement were binding judicial admissions or invoked collateral estoppel and that the plea was evidence supporting the Department's factual findings. Given that this was a clear-cut issue of a breach of ethics supported by a guilty plea and conviction, the Department argued, expert testimony was not required to show that false billing, false patient records, and omissions on the license application violated the Act. Further, there was caselaw on point stating that a member of the Board did not need to be present to ensure due process. Moreover, there was evidence that supported the Department's determination that Leone violated the Act, and the discipline imposed was within the Director's discretion.

¶ 40        The circuit court reversed the administrative decision, finding that expert testimony was required to establish the Department's allegations in the administrative complaint. The court found that collateral estoppel did not bar Leone from attempting to rebut the statements in the guilty plea and that the ALJ viewed the factual basis in the guilty plea as indisputable. The matter was remanded for the presentation of expert testimony by the Department. The court also recommended that if after the hearing on remand, discipline was imposed, the circumstances of the case militated in favor of probation and not suspension.

¶ 41        C. Director's Refusal to Conduct Administrative Hearing and Circuit Court's Order

¶ 42        Following the circuit court's order, the Director issued an intransigent order stating, "I disagree with the Court's ruling." The Director explained that expert testimony was required

- 12 -

when the subject matter of the hearing was such that "only persons of special skill or experience in that area are capable of forming a correct judgment with respect to the applicable facts." However, in this case, "[t]he trier of fact is capable of determining that a conviction for Medicare fraud is a conviction for fraud for the purposes of the [Act]," based on Leone's "stipulated admissions of Medicare and insurance fraud." The Director stated, "The assessment of this information does not require scientific knowledge, expertise, or experience." Further, the Director found the count based on the fraudulent renewal application had been proven and was not addressed by the court in reversing the Department's decision. The Director refused to "re-open the proceedings to present unnecessary expert testimony," rejected the recommendation of a sentence of probation, and asked the court to reconsider its ruling; in the alternative, the Director asked that the circuit court reverse the Department's decision without a remand so the Department could appeal the matter to the appellate court. The Director then reimposed the indefinite two-year suspension of Leone's license.

¶ 43        Leone once again filed an emergency motion to stay the enforcement of the suspension, which was granted by an agreed order. At a subsequent hearing, the circuit court once again remanded the matter to the Department for proceedings consistent with its prior order.

¶ 44                              D. Second Administrative Proceeding

¶ 45        The matter returned before the same ALJ as the previous hearing. By agreement of the parties, the transcripts and exhibits of the prior proceeding were admitted into evidence. At the second hearing, Dr. Richard Dietzen testified as an expert for the Department and Fucinari as an expert for Leone.

¶ 46                              1. *Dr. Richard Dietzen*

¶ 47        Dietzen testified that he had been a chiropractor in Illinois for 39 years, owned a

private chiropractic office, and was formerly director of a hospital's chiropractic department. He served in various positions for the Illinois Chiropractic Society, including serving twice as president, and he was involved in approving the Illinois Chiropractic Society's code of ethics. Dietzen served on the National University of Health Sciences' Board of Trustees and the Illinois Medical Licensing Board. He had previously testified as an expert witness in cases involving ethics, but he had no certifications in coding or compliance.

¶ 48 Deitzen reviewed the testimony and exhibits, including the plea agreement from the prior proceedings, as well as the American Chiropractic Code of Ethics and the Illinois Chiropractic Society of Ethics. The state and national ethical standards are "almost verbatim," and the same standards are also mirrored in the Act. He did not review Leone's patients' medical records and did not visit his office, but he was familiar with the photos of the office in evidence.

¶ 49 Chiropractors who engaged in Medicare fraud violated several tenets of chiropractic ethics. To a reasonable degree of chiropractic certainty, Deitzen was able to opine, based on the plea agreement, that it was "very evident *** that [Leone] billed for services he wasn't doing and wasn't coding properly." It was hypothetically possible in Leone's open-plan office for someone in another room, including a chiropractic assistant, to visually supervise a patient doing exercises in the sunroom. Leone would have been in compliance if the patient was supervised. However, it was Dietzen's understanding of the plea agreement that there was no supervision.

¶ 50 It was apparent there was a pattern of overcharging for services that were not provided, false notations in patient records to support the false charges, and the submission of false claims to insurance that went on for at least five years. Leone had been required to take several classes and was apparently well versed in medical coding, even taking one of Fucinari's classes

which Dietzen held in high regard. It was clear that Leone was not ignorant of coding requirements, as he "was well schooled in the language of healthcare." To make five years' worth of mistakes "makes it very serious." Leone obtained fees by fraud, deceit, or misrepresentation, and those actions fell below the professional and ethical standards required of chiropractors in Illinois. Leone's conduct, along with his past disciplinary history, "demonstrate[d] a pattern of behavior that [was] not acceptable."

¶ 51                                    2. *ALJ Report and Recommendation*

¶ 52        The ALJ found that Dietzen testified with credibility and consistency, while Leone's testimony was less credible given the admissions made in the plea agreement. The ALJ found Leone's testimony to be self-serving and that he was repeatedly required to take continuing education in record keeping and Medicare billing. The ALJ also found that Leone's explanation of the omission on his renewal application was not credible and Fucinari's testimony supported a finding that failing to disclose the conviction was a violation of the Act. The ALJ further found that Fucinari's opinion that Leone billed in conformance with code 97110 relied on Leone's "self-serving representations" and "unreasonably discount[ed]" Leone's admissions in the guilty plea. Fucinari himself "acknowledged that he would make different findings if [Leone's] admissions in the Plea Agreement were true." Dietzen's opinions were consistent with the evidence in the record, including Leone's admissions in his plea agreement, Leone's experts' opinions regarding the standard for billing under code 97110, and Leone's conduct as described in the plea agreement. The ALJ concluded that the Department had established all the counts in the complaint.

¶ 53        In coming to a recommended sanction, the ALJ weighed the aggravating and mitigating factors. In aggravation, Leone had prior discipline in Washington and Illinois that led

to him being required to attend additional continuing education regarding record keeping, billing, and coding; he committed multiple serious offenses; he was motivated by financial gain, as indicated by his billing history; injured insurers waited up to nine years for reimbursement; and he lacked contrition for his offenses. The offenses were serious and impacted numerous facets of the relationship between the public and medical providers, ultimately impacting public health and safety. In mitigation, restitution was paid in full as ordered by the federal court. Leone made voluntary remedial changes to his office's documentation practices, and the positive testimony of the character witnesses was considered. The recommendation was that Leone's license be suspended indefinitely for a minimum of two years.

¶ 54              3. *The Board's Recommendation and the Director's Decision*

¶ 55       Leone filed a motion for rehearing, asking for reconsideration of the ALJ's report and recommendation. The Board once again adopted the ALJ's factual findings, conclusions of law, and recommended discipline. The Director denied Leone's request, issuing a detailed order rejecting numerous arguments and imposing an indefinite suspension of Leone's license for a minimum of two years.

¶ 56                   4. *Review in the Circuit Court*

¶ 57       Leone once again filed a complaint for administrative review in the circuit court, and he successfully sought a stay of enforcement of the Director's decision. The court ultimately reversed the Department's decision, finding that (1) due process was violated where a Board member was not present to hear live testimony and there was no clear indication the Board had reviewed the record; (2) the decision could not rely on Dietzen's testimony where he was not an expert in chiropractic billing compliance or coding and did not review the medical records or bills at issue and did not observe Leone's office; (3) there was no legal authority to support the

imposition of a two-year indefinite suspension; and (4) the indefinite suspension violated the court's prior order finding probation to be a reasonable punishment.

¶ 58 This appeal followed.

¶ 59 II. ANALYSIS

¶ 60 "The Act provides that all final administrative decisions of the Department are subject to judicial review, pursuant to the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2020))." *Sharma v. Division of Professional Regulation of Department of Financial & Professional Regulation*, 2023 IL App (3d) 220095, ¶ 16 (citing 225 ILCS 60/41 (West 2020)). "Review extends to all questions of law and fact presented by the record." *Western Illinois University v. Illinois Educational Labor Relations Board*, 2021 IL 126082, ¶ 30 (citing 735 ILCS 5/3-110 (West 2016). The question presented on appeal determines the standard of review applied. *Id.* Questions of law are reviewed *de novo*, while the Department's findings of fact will be deemed *prima facie* true and correct unless they are against the manifest weight of evidence. *Id.*, "A mixed question of law and fact is reviewed for clear error." *Id.*

¶ 61 A. Procedural Due Process

¶ 62 The circuit court found that the Department failed to afford due process to Leone. However, on administrative review, we review the decision of the Department, rather than that of the court below. *Id.* It is, then, incumbent on Leone to advance any due process argument. While his brief mentions due process in two headings, he offers no substantive argument in support of that assertion. We agree with the Department that Leone has forfeited any contentions that might have been made in this regard.

¶ 63 Even if the issue was not forfeited, it lacks merit. "[A]n administrative proceeding is governed by the fundamental principles and requirements of due process of law. However, due

process is a flexible concept and requires only such procedural protections as fundamental principles of justice and the particular situation demand." *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 92 (1992). "An administrative hearing comports with due process where the parties are given (1) the opportunity to be heard, (2) the right to cross-examine adverse witnesses, and (3) impartiality in ruling on the evidence." *Sharma*, 2023 IL App (3d) 220095, ¶ 18 (citing *Wolin v. Department of Financial & Professional Regulation*, 2012 IL App (1st) 112113, ¶ 25). We review a claimed due process violation *de novo* and will only reverse on due process grounds where there is a showing of prejudice. *Id.*

¶ 64        The argument that a Board member must be present at the administrative hearing level finds its roots in a single sentence from the opinion in *Abrahamson*. Referring to due process and the presence of board members, the court in *Abrahamson* stated, "The court has specifically held that it is sufficient if even only one Board member listened to the live testimony." *Abrahamson*, 153 Ill. 2d at 95. The issue with relying on this sentence in isolation is that the preceding language in the opinion appeared to obviate the need for even one board member to be present: "It is settled that, absent express statutory language to the contrary, *agency members making the final decision need not be present when the evidence is taken*, so long as they review the record of proceedings." *Id.* (Emphasis added.)

¶ 65        The Appellate Court, First District, recognized this distinction in *Kafin v. Division of Professional Regulation of Department of Financial & Professional Regulation*, 2012 IL App (1st) 111875, ¶ 33, holding that "the *Abrahamson* decision support[ed] the conclusion that, absent express statutory language to the contrary, Board members need not be present when the evidence is taken so long as they review the record of proceedings before rendering their recommendation." (Internal quotation marks omitted.) The court went on to find that the Act did not contain express

statutory language requiring the presence of Board members at the hearing and the record showed that the Board members reviewed the record before issuing a decision. *Id. Kafin* was followed by *Masood v. Division of Professional Regulation of Department of Financial & Professional Regulation*, 2023 IL App (1st) 220657, ¶ 76, finding that "cases following *Abrahamson* have explicitly clarified that no Board members are required to be present at the hearing, so long as they review the record of proceedings before rendering their recommendation."

¶ 66    We find no reason to depart from the prior rulings of the appellate court, and Leone provides none, so we conclude that the physical absence of a Board member at the hearing below does not constitute a violation of Leone's due process rights.

¶ 67    The circuit court in this case also found that due process was not afforded where only one Board member signed the findings of fact, conclusions of law, and recommendation to the Director. In *Sharma*, the Appellate Court, Third District, rejected the argument that where only the chairperson signed the Board's findings and recommendation, the decision lacked a quorum and was not supported by the majority of the Board. The *Sharma* court found that "the Board's recommendation to the Director provide[d] that it was made by a majority of its members," that there was "no authority requiring that each Board member sign the recommendation," and that the chairperson signed the Board's report on behalf of the Board following an executive order from the governor suspending in-person attendance by members of a public body due to COVID-19. *Sharma*, 2023 IL App (3d) 220095, ¶ 28. *Sharma* supports the conclusion that there was no violation of Leone's procedural due process rights as a result of the Board's decision being signed by only one of its members.

¶ 68                    B. Administrative Decision

¶ 69                    1. *Necessity and Adequacy of Dietzen's Testimony*

¶ 70        Leone and the Department quarrel over the need for expert testimony in this matter to establish violations of the Act. The Department argues that the actions of Leone are so clear cut and violative of the Act that expert testimony is not required. Leone points to established precedent requiring the use of expert testimony to establish violations of the Act and further argues that Dietzen did not possess the required qualifications to opine on whether the actions of Leone would violate the Act.

¶ 71        It is undisputed that Leone submitted charges under billing code 97110. It also does not appear to be disputed that this billing code requires some degree of supervision of the patient's exercises. Both of Leone's experts acknowledged this point. There is also no dispute that Leone's assistant could have provided that supervision; Dietzen conceded as much. The factual dispute in the record is *whether* such supervision was provided. The substance of Leone's admissions in his federal stipulation is that such supervision *was not* provided; the substance of his testimony was that such supervision *was* provided. This represents a factual dispute, which the experts are unlikely to be of assistance in resolving. See *John Crane Inc. v. Allianz Underwriters Insurance Co.*, 2020 IL App (1st) 180223, ¶ 20 (noting it is for the trier of fact to resolve factual disputes, and it need not take expert testimony on a subject as "conclusive," but rather may afford expert testimony the appropriate weight based "upon the facts and reasons which form the basis of the expert's opinion." (Internal quotation marks omitted.)). Indeed, the experts in the case disagreed about little when it comes to what *should have* been done.

¶ 72        Here, Leone pled guilty to submitting a false demand for payment upon the United States. See 18 U.S.C § 1003 (2012) ("Whoever knowingly and fraudulently demands or endeavors to obtain any share or sum in the public stocks of the United States *** shall be fined under this title or imprisoned not more than five years, or both."). In his plea, Leone admitted to billing for

services that were not actually provided to his patients as claimed, "and the instruments containing the demands for payment of public money, therefore were false when they were submitted" and "were submitted to Medicare with the knowledge that he did not perform the service charged."

¶ 73    The definition of fraud is well known to those in the legal community and often does not require expert assistance in detecting its presence. See FRAUD, Black's Law Dictionary (12th ed. 2024) ("A knowing misrepresentation or knowing concealment of a material fact made to induce another to act to his or her detriment."). The commonsense understanding of the concept of fraud and the conduct admitted to in the guilty plea plainly supports the counts in the administrative complaint alleging that Leone (1) engaged in dishonorable, unethical, or unprofessional conduct of a character likely to deceive, defraud, or harm the public; (2) obtained a fee by fraud, deceit, or misrepresentation; and (3) made a false, fraudulent, or deceptive statement in a document connected with practice under the Act.

¶ 74    The guilty plea supports the conclusion that Leone knowingly and intentionally submitted claims for reimbursement to private insurance companies for services provided under code 97110 where the services did not meet the requirements to be paid under that code. This pattern went on for approximately five years, resulting in 1324 false claims in the amount of $93,900. During this time, Leone engaged in additional training on the topic of record keeping and billing under code 97110. The experts were all in agreement that, *if true*, these facts show gross, willful, and continued overcharging for professional services, including filing false statements for the collection of fees for which services were not rendered. Plainly understood, this conduct supports the charge that Leone willfully engaged in making or filing false records or reports in his practice.

¶ 75    Relying on *Chase v. Department of Professional Regulation*, 242 Ill. App. 3d 279,

288 (1993), Leone argues that expert testimony was necessary in this case. The court in *Chase* found that the Department's disciplinary action against an architect required expert testimony because the case involved "technical concepts" and it was "impossible" for "laymen *vis-à-vis* architecture, to determine from this record whether [the defendant] violated the Act." *Id.* In this case, however, the experts having specialized knowledge were largely in agreement about what the professional standards required; the dispute was about whether there had been any supervision corresponding to Leone's billings under code 97110. Their expertise was of no assistance in resolving this factual dispute.

¶ 76       A layperson is more than capable of determining the connection between the conduct alleged in the complaint, admitted in the guilty plea, and prohibited by the Act without expert testimony. *Cf. Voykin v. Estate of DeBoer*, 192 Ill. 2d 49, 59 (2000) (finding expert testimony is not required where a layperson could readily appraise the connection between medical treatment and injury). Again, this is a matter that involves issues commonly understood by the public at large.

¶ 77       We also note that the parties agreed below that Leone would present his case first. Consequently, even before the Department was required to put on any evidence, expert or otherwise, Leone's own experts provided the testimony necessary to conclude that it would violate professional standards to submit bills under code 97110 if there had been no supervision of the patient. As such, any testimony by Dietzen would have been superfluous on that point. Consequently, we do not find it necessary to scrutinize his testimony further.

¶ 78                    2. *Findings of Fact and Ultimate Decision*

¶ 79       Leone next argues that the testimony of Fucinari and Gwilliam established that there were no violations of the Act. Our review of the record establishes that the findings of fact

- 22 -

are supported by the evidence and that the ultimate decision was not clearly erroneous. While the "clearly erroneous" standard is highly deferential, it does not relegate judicial review to mere blind deference to the Department's order. *Western Illinois University*, 2021 IL 126082, ¶ 70. Further, the Department's "findings of fact will be deemed *prima facie* true and correct unless they are against the manifest weight of evidence. [Citation.]" *Id. ¶* 30. Determinations as to the weight of evidence and the credibility of witnesses are uniquely within the province of the Department, and we will not substitute our judgment for that of the Department. *Reynolds v. Champaign County Officers Electoral Board*, 379 Ill. App. 3d 423, 425 (2008). "The [Department's] decision should be upheld when the record contains competent evidence." *Village of Franklin Park v. Sardo*, 2020 IL App (1st) 191161, ¶ 24 (citing *Robbins v. Board of Trustees of the Carbondale Police Pension Fund*, 177 Ill. 2d 533, 538 (1997)).

¶ 80          "In examining an administrative agency's factual findings, a reviewing court does not weigh the evidence or substitute its judgment for that of the agency. Instead, a reviewing court is limited to ascertaining whether such findings of fact are against the manifest weight of the evidence." (Internal quotation marks omitted.) *Van Dyke v. White*, 2016 IL App (4th) 141109, ¶ 19. An administrative agency's factual determinations are against the manifest weight of the evidence if the opposite conclusion is clearly evident. *Id.*

¶ 81          The crux of the argument presented by Leone in his brief is that both Gwilliam and Fucinari testified that Leone did not violate the Act when billing for services under code 97110. Of course, this is a simplistic view of the testimony. In fact, what the two experts actually testified to was that based on their understanding of how services were provided, Leone's assistant supervised the therapy exercises patients would perform in the sunroom from the front desk, approximately 12 feet away. This understanding was based on conversations with Leone and an

examination of the layout of his practice. In their view, the assistant was sufficiently trained so that if supervision was delegated to her and she visually supervised the patients' complete exercises, there was no violation of the Act. However, when confronted with the admissions in the guilty plea, both experts admitted that if the services were provided as stipulated to in the plea agreement, then the services were improperly billed and the entries in patient files were inaccurate.

¶ 82        Here, there were two competing versions of events. One version is reflected in Leone's guilty plea and stipulation to one count of misdemeanor Medicare fraud, pursuant to which he admitted that it was his practice to bill insurance companies pursuant to code 97110 for therapy exercises performed by his patients without *any* supervision from him or any of his employees. In the other, Leone repudiated the admissions in his guilty plea, stating he was unable to articulate what he did wrong to result in the federal conviction, except for failing to properly communicate to the United States attorney a chiropractor's ability to delegate supervision to an employee. Leone suggests the language of the plea agreement fails to capture the nuance of a chiropractor's ability to delegate supervision and how that supervision can be carried out. Essentially, Leone asks us to intervene on judicial review and reweigh the evidence and reassess the credibility of witnesses, which we are unable to do. See *Siddiqui v. Illinois Department of Professional Regulation*, 307 Ill. App. 3d 753, 762 (1999). The trier of fact is entitled to judge the credibility of witnesses, resolve any conflicts in the evidence, and draw reasonable inferences and conclusions from the facts, not the appellate court. *Id.* In this matter, there is competent evidence in the record that supports the findings of the Department and decision of the Director, and therefore, we refuse to overturn the decision. *Sardo*, 2020 IL App (1st) 191161, ¶ 24.

¶ 83        Leone cites *Romano v. Municipal Employees Annuity & Benefit Fund of Chicago*, 384 Ill. App. 3d 501 (2008), in an apparent attempt to argue that the guilty plea is insufficient to

establish a violation of the Act. In *Romano*, the plaintiff, a former City of Chicago Water Department employee, pled guilty to a felony—federal mail fraud—arising from participation in a scheme to pay bribes to management at the city's water department, in exchange for trucking business. *Id.* at 501-02. Following the felony conviction, the plaintiff's municipal pension benefits were terminated. *Id.* at 501. Applying a judicially crafted "but for" test, the *Romano* majority concluded that "there was no evidence before the Board that the manner in which the plaintiff discharged his duties as a municipal employee was either a material element or a substantial factor in his conviction for mail fraud" and "nothing in the Plea Agreement establishes that the plaintiff used his position with the City to facilitate the crime to which he pled guilty or that his conviction was the result of a misuse of that position." *Id.* at 505.

¶ 84    *Romano* is clearly distinguishable, as here, Leone stipulated to committing the conduct underlying his federal plea while practicing as a chiropractor, so *Romano*'s "but for" test is inapplicable to these facts. More to the point, both parties agree that a misdemeanor conviction does not establish a *per se* violation of the Act. Rather, it is the conduct Leone stipulated to in his plea—as accepted by the finder of fact—that establishes his violations of the Act. Furthermore, Leone was not barred from rebutting the admissions in the guilty plea during the proceedings. It is evident his admissions were not treated as judicial admissions, but as evidentiary admissions which could be weighed by the trier of fact against the totality of the evidence. See *Green v. Jackson*, 289 Ill. App. 3d 1001, 1008 (1997) (stating that "judicial admissions do not include admissions made during the course of other court proceedings," but such statements constitute "evidentiary admissions"); *Firstmark Standard Life Insurance Co. v. Superior Bank FSB*, 271 Ill. App. 3d 435, 438 (1995) (stating that "a judicial admission does not include an admission made during the course of another court proceeding; such an admission is only an evidentiary admission").

¶ 85　　　　　We also find that the Department established a violation of the Act where Leone failed to note the federal conviction on his renewal application. The experts that testified in the proceedings below agreed on that point. While Leone points to his own testimony and claims the rejection of his version of events is "nonsensical," the testimony of his own experts provides the applicable standard by which he is measured, and his stipulation provides the facts showing a departure from that standard. The remainder of the evidence on this point does not show the finding was clearly erroneous.

¶ 86　　　　　　　　　　　　　　C. Discipline

¶ 87　　　　　Leone's final argument focuses on his discipline. He asserts that (1) the decision to impose an indefinite two-year suspension was contrary the circuit court's order to impose probation; (2) the Department does not have the authority to impose an indefinite term of suspension; (3) the Department improperly considered certain evidence in formulating the severity of discipline; (4) the discipline in this case is incongruent with that imposed in similar matters; and (5) the discipline is unrelated to the purpose of the Act.

¶ 88　　　　　When considering an administrative sanction, a reviewing court " 'defers to the administrative agency's expertise and experience in determining what sanction is appropriate to protect the public interest.' " *Gruwell v. Illinois Department of Financial & Professional Regulation*, 406 Ill. App. 3d 283, 295 (2010) (quoting *Abrahamson*, 153 Ill. 2d at 99). The Department abuses its discretion when it imposes discipline that is overly harsh in view of the mitigating circumstances or unrelated to the purpose of the Act. *Sharma*, 2023 IL App (3d) 220095, ¶ 41. " 'The purpose of the Act is to protect the public health and welfare from those not qualified to practice medicine.' " *Id.* (quoting *Kafin*, 2012 IL App (1st) 111875, ¶ 42).

¶ 89　　　　　A review of the initial circuit court order in this matter reveals that it merely

recommended that the Department consider probation as a punishment; it did not make a ruling to that effect. Indeed, the court recognized during arguments that it lacked the authority to order a specific discipline on remand of the matter to the Department. Leone does not direct this court's attention to any authority allowing a circuit court to predetermine the discipline for a violation of the Act on judicial review while at the same time remanding the matter back to the Department for further proceedings. The most recent circuit court order finding that the suspension violated this recommendation constituted clear error.

¶ 90　　　　Turning to the Department's ability to impose a minimum two-year indefinite term of suspension, pursuant to section 22(A) of the Act, "[t]he Department may revoke, suspend, place on probation, reprimand, refuse to issue or renew, *or take any other disciplinary or non-disciplinary action as the Department may deem proper with regard to the license or permit of any person issued under this Act*." (Emphasis added) (225 ILCS 60/22(A) (West 2022)). The language "any other disciplinary *** action" (*id.*) plainly encompasses indefinite suspensions. See *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 25 ("When interpreting a statute, the primary objective is to give effect to the legislature's intent, which is best indicated by the plain and ordinary language of the statute itself."). Leone fails to acknowledge this language in the statute and specifically omits any reference to it when discussing the Department's authority under the statutory scheme.

¶ 91　　　　Despite this unambiguous grant of authority in section 22, Leone directs our attention to section 43 of the Act, which states that "[a]t any time after the successful completion of a *term* of probation, suspension, or revocation of a license, the Department may restore the license to the licensee, unless after an investigation and a hearing, the Secretary determines that restoration is not in the public interest." (Emphasis added) (225 ILCS 60/43 (West 2022)). This,

he argues, means any suspension must have a definite term. We are unpersuaded. Leone's interpretation not only contradicts the explicit language in the statutory section discussing disciplinary action (*id.* § 22), the use of the word "term" in the subsequent section discussing restoration of licensing from discipline (*id.* § 43) is not in conflict with an indefinite suspension with a minimum two-year term. This section does not support Leone's argument, as the language following the word "term" states the Department "may" restore the license. Further, the indefinite suspension does have an initial term of two years.

¶ 92 Leone acknowledges that recent decisions from the appellate court have rejected the identical argument that he is advancing in this appeal, relying on essentially the same reasoning expressed above. See *Masood*, 2023 IL App (1st) 220657, ¶ 80; *Sharma*, 2023 IL App (3d) 220095, ¶¶ 37-40. Nonetheless, Leone argues that the word indefinite does not appear in the statute; that the word "term" implies a fixed punishment; and that "[i]f the legislature had intended for the Department to be authorized to issue indefinite suspensions, it would have stated 'indefinite' suspension in Section 22 of the Act." Again, the statute allows the Department to take any disciplinary action it deems proper. 225 ILCS 60/22 (West 2022). The discipline imposed in this matter is within that broad grant of authority.

¶ 93 Leone next argues that the fact his discipline relies on the false assertion that he has been previously disciplined twice is a ground for reversal. We disagree. Leone focuses on his Washington disciplinary matter, arguing that in fact the matter did not result in discipline or an admission of fault by Leone. However, Leone testified that he was disciplined in Washington, and he articulated the reason for that discipline and the remedial measures he was required to undertake to comply with the consent order. The Department was not solely relying on the documentation of the proceedings from the Washington licensing authority. Looking at those documents, it is clear

the stipulation states that it was not a "formal disciplinary action," but the testimony and document itself lead to the undeniable inference there was informal discipline meted out pursuant to an agreed stipulation. We are unable to agree with Leone that the Washington matter did not result in discipline, albeit of an informal nature.

¶ 94　　　　Next, Leone cites numerous cases in an attempt to establish that the discipline in this case is overly harsh, noting a lack of uniformity. The cases relied on by Leone mostly concern inappropriate sexual contact or relations by providers and their patients. We note that each disciplinary matter is unique and that in cases where "facts are strikingly similar to those in another case, a degree of uniformity in the discipline imposed should be sought." *In re Clayter*, 78 Ill. 2d 276, 283 (1980). However, when the cases submitted for comparison are not similar, "the need for 'uniformity' disintegrates." *Walsh v. Department of Insurance*, 2016 IL App (1st) 150439, ¶ 22. Given the factual variances, the cases cited by Leone offer no assistance in evaluating the discipline imposed in this matter. We are unable to conclude that there is a fatal variance in the discipline imposed in this matter when compared to the cases relied on by Leone.

¶ 95　　　　Finally, we address the argument that the punishment crafted by the Department fails to advance the purpose of the Act and is overly harsh in light of the mitigating circumstances. The Department and the Director have certainly given us reason for pause. The unprincipled, intransigent decision of the former Director to outright reject the initial remand of the circuit court looms over these proceedings. Further, as mentioned, these proceedings have been anything but prompt, at one point experiencing a three-year hiatus at the circuit court level. Counsel for Leone acknowledged that after the circuit court entered the injunction staying enforcement of the suspension pending appeal during the first administrative review, counsel was ready to proceed, but the case remained in stasis due to turnover at the attorney general's office, resulting in a

dereliction of prosecution.

¶ 96 Despite these factual eccentricities, the mitigating factors found by the ALJ and the Director and the purpose of the Act do not indicate that the discipline in this case was overly harsh or that it failed to serve the end of protecting the public health and welfare from those not qualified to practice medicine. See *Sharma*, 2023 IL App (3d) 220095, ¶ 41. There was no abuse of discretion in the discipline imposed. *Id.*

¶ 97                                     III. CONCLUSION

¶ 98 For the reasons stated, we reverse the circuit court's judgment and affirm the Director's decision.

¶ 99 Circuit court judgment reversed.

¶ 100 Director's decision affirmed.